(No. 15276.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD BELLE, Plaintiff in Error.

*Opinion filed June 20, 1923.*

1. CRIMINAL LAW—*an instruction as to reasonable doubt is not necessary—reversal.* Refusal to give an instruction defining or attempting to define the term "reasonable doubt" is not ground for reversal of a judgment of conviction where it does not appear that the defendant was prejudiced by such refusal, as the words themselves have no other or different meaning in law than when used in ordinary transactions.

2. SAME—*when name of owner of property burglarized is sufficiently proved as alleged.* A judgment of conviction will not be reversed because the Christian name of the owner of the stolen property or of the owner of the building burglarized was proved only to the extent of the initials, no question being made at the trial as to the identity of the owner.

WRIT OF ERROR to the Circuit Court of Edgar county; the Hon. JOHN H. MARSHALL, Judge, presiding.

DYAS & REDMAN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, GEORGE W. BRISTOW, State's Attorney, and VIRGIL L. BLANDING, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Edward Belle, plaintiff in error, Robert Armstrong and James Cummins were jointly indicted at the November term, 1922, of the Edgar county circuit court for the burglary of the store building of S. Arthur Board, larceny of Board's goods and chattels, and robbery of Board. Cummins pleaded guilty. Armstrong and Belle entered their motion to quash the indictment, which was overruled. They then pleaded not guilty. They were tried jointly before a jury and the court, and at the close of all the evidence,

308—38

on their motion the State's attorney was required to elect upon which count of the indictment he would prosecute, and he elected to prosecute upon the count for burglary. A verdict was returned by the jury finding both Belle and Armstrong guilty of burglary as charged, and their ages were found to be 36 and 42 years, respectively. Motions for a new trial and in arrest of judgment were overruled and judgment was entered on the verdict and the defendants were sentenced to the penitentiary for indeterminate terms of from one to twenty years. Belle sued out this writ of error to review the judgment.

On July 13, 1922, Robert Armstrong, James Cummins and Slim Wallace made arrangements with a taxi driver by the name of Milo Fortune, at Terre Haute, Indiana, to drive them to Robinson, Illinois, that evening. About 5:30 in the afternoon of that day the taxi driver drove to the barber shop of the plaintiff in error in Terre Haute and there met Belle, Armstrong, Cummins and Wallace. Fortune was informed by the four men that they were going to drive to Robinson to engage in a big liquor deal. They left Terre Haute about six o'clock in the evening. Fortune drove the automobile and Armstrong sat in the front seat with him, and Cummins and Belle occupied the rear seat. Either before or shortly after they left Terre Haute they changed their plans and directed Fortune to drive them to Paris, in Edgar county, Illinois. It appears from the evidence that Fortune understood that they were going to Paris for the purpose of obtaining intoxicating liquor. Cummins testified that they went to Paris to rob a woman of her diamonds but that when they arrived in Paris he could not find the man he was to meet there to help commit the robbery. They arrived in Paris about 8:30 P. M. After a time they drove south from the public square to Crawford street and east to Marshall street, and when the car reached a dark place on that street, about 100 yards south of the store burglarized and owned by Board, Cummins directed

Fortune to stop his car on the side of the street. Cummins
and Belle then left Fortune and Armstrong in the car and
proceeded to the store in question, after Cummins had di-
rected Fortune to keep his engine running until they re-
turned. Cummins testified for the State that he and Belle
left the car for the purpose of robbing or burglarizing
Board's store; that he told Belle to go in the store and
purchase some groceries and see how it looked; that Belle
went into the store and afterwards came out and said that
things were looking all right and that he would go back
into the store and call for soap; that he (Cummins) stood
on the outside and looked in the window while Belle went
in the first time; that he followed Belle in the store the
second time, and after he had taken a step or two inside
the store he ordered everyone to hold up their hands; that
according to a pre-arranged plan between Belle and himself
Belle held up his hands as did the rest of the people in the
store; that he (Cummins) had a revolver in his hand and
pointed it at the proprietor, who had his hands on the show
case, and that when he demanded, "Hands up!" Board first
put his hands down and that he fired at him; that he then
ordered Belle three times to go to the till and get the money
but Belle did not do so; that while the witness was taking
the money out of the till and searching Board's person Belle
"got cold feet" and ran out of the store and to the car; that
he followed Belle shortly after, and both got into the car
and ordered Fortune to drive them rapidly out of the city.

Belle in his testimony admitted that he took part in the
burglary of the store in the manner testified to by Cummins,
but his testimony was to the effect that after they left the
car for the store Cummins said to him, "Damn you, go in
the store and buy groceries; it ain't whisky we're after."
The remainder of his testimony is to the effect that Cum-
mins compelled him with his revolver to go into the store
and buy groceries and take part in the burglary, and all
that he did in connection with the burglary he did while

under duress and while threatened by Cummins with a revolver. When he ran back to the car he said to Armstrong and Fortune as he jumped into the car, "Let's get out of here; Cummins has held up that store; step on her." Cummins followed Belle so closely out of the store that he was able to jump on the car and get into it before it got into rapid motion and said to Belle, "You done a hell of a trick when you seen what I was doing; if I would do right I would slap you in the mouth." This is the only corroboration of Belle's claim that during the burglary he acted under duress, and the things that both Belle and Cummins said as they got into the car are equally corroborative of the testimony of Cummins, to the effect that Belle voluntarily took part in the burglary and got scared and ran away after Cummins fired the shot at Board.

Belle was the first of the defendants to be arrested, about two or three weeks after the burglary occurred. He made a confession to the sheriff after his arrest and told the story in detail of how the burglary was planned and executed and said that he would not have committed the burglary if he had not been drunk. He never at any time before he was arrested told anybody anything about the crime he had assisted in committing. He never made the claim that he committed the burglary under duress until he got on the witness stand to testify. Cummins' statement that Belle told him after he had purchased all the groceries except some soap that he would go back and call for soap is corroborated by the testimony of Board and a witness named Hamilton, both of whom testified that just before Belle went out of the store he said to Board that he wanted some soap but did not know the kind he wanted and would go out and see his wife and find out. He had no wife there to interview, and there was no occasion for his making up this story if he was acting under duress, as Cummins was outside and not in hearing of this conversation. The evidence

of Belle's guilt is very convincing, and the jury could not reasonably have returned any verdict except that of his guilt.

The points of law raised by plaintiff in error are, (1) that the court erred in refusing to give an instruction offered by him defining the term "reasonable doubt;" (2) that the conviction was based solely upon the testimony of an accomplice, Cummins, who was not corroborated by other evidence; (3) that there was a variance in the allegation and proof as to the ownership of the store, the allegation being that the store was the property of S. Arthur Board and the proof showed that it was the property of S. A. Board; and (4) that the *corpus delicti* could not be established solely by his confession.

This court has held that it is doubtful whether any better definition of the term "reasonable doubt" can be found than the words themselves, and that that term has no other and different meaning in law than it has when used in ordinary transactions or affairs of life. (*People* v. *Barkas,* 255 Ill. 516; *People* v. *Fox,* 269 id. 300.) This court has many times intimated that the giving of many instructions on reasonable doubt might result in so much confusion as to cause the reversal of a judgment of conviction. While we have approved the giving of an instruction that defines correctly and concisely the meaning of the term "reasonable doubt," we are not disposed to reverse a judgment of conviction in a case for the reason, alone, that no instruction was given defining that term, and particularly where it does not appear that the defendant was prejudiced by such refusal. The defendant was not so prejudiced in this case, and the court did not err in refusing to give the instruction.

Plaintiff in error's second and fourth propositions have no standing in this case. His conviction was not based solely on the testimony of an accomplice, as has already been shown, and the *corpus delicti* was established by three witnesses, Cummins, Board and Hamilton, as well as by plaintiff in error's confession.

A judgment of conviction will not be reversed because the Christian name of the owner of the stolen property or the owner of the building burglarized was proved only to the extent of the initials, no question as to the identity of the owner being made at the trial. (*Little* v. *People*, 157 Ill. 153.) The converse of the third proposition was also held in *People* v. *Jennings*, 298 Ill. 286. There was no fatal variance in this case.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*