The People of the State of Illinois, Defendants in Error, v. Perley E. Wiggins, Plaintiff in Error.

Gen. No. 7,510.

1. BANKING—*requisites of indictment for embezzlement by receiving deposit during insolvency.* An indictment of an individual member of a partnership engaged in a private banking business, charging embezzlement by the acceptance of a deposit during insolvency, in violation of Crim. Code, Cahill's Ill. St. ch. 38, ¶ 38, relative to such offense, was not quashable on technical objections, in view of the saving provisions of Crim. Code, sec. 408, Cahill's Ill. St. ch. 38, ¶ 740, that an indictment shall be deemed sufficiently technical and correct where it follows the language of the statute or states the offense so plainly that the nature thereof may be readily understood by the jury, where it followed the language of the statute generally and alleged all the elements of the offense plainly and concisely.

2. CRIMINAL PROCEDURE—*interrogation of witnesses before grand jury by private prosecutor as invalidating indictment.* The interrogation of witnesses before the grand jury by a special private prosecutor, on order of court granted on motion of the State's Attorney, is not ground for quashing the indictment.

3. JURY—*completeness of jury list presumed on challenge to array.* A challenge to the array was properly overruled where based on affidavits tending to show that it was drawn from jury lists containing but one-tenth of the names of the registered voters of the county, without any showing that the supervisors were derelict in their duty in preparing the jury lists, it being

presumed, in the absence of evidence to the contrary, that they performed their official duty in preparing the jury list in question and that it was legally sufficient.

4. Jury—*limiting scope of interrogation of veniremen on voir dire.* It was not error, in a prosecution of a private banker for embezzlement by accepting a deposit during insolvency, to sustain objections to questions propounded to prospective jurymen on their *voir dire*, which contained incorrect statements of the law of the case and called for a statement in favor of which party they would decide under a supposed state of the evidence, by means of hypothetical questions, based upon such incorrect statements of law.

5. Banking—*results of audit of bank's books admissible in prosecution of banker for embezzlement.* In a prosecution of a private banker for embezzlement by accepting a deposit during insolvency, in violation of Crim. Code, Cahill's Ill. St. ch. 38, ¶ 38, it was not error to permit auditors of the bank's books to testify as to the results of an investigation by them.

6. Banking—*when deposit "lost" to depositor by embezzlement.* A deposit made with and accepted by a private banker during insolvency, in violation of Crim. Code, Cahill's Ill. St. ch. 38, ¶ 38, is lost to the depositor, when, by reason of insolvency, he is deprived of the right to have it refunded on demand or paid out on check, although securities to cover it are put up with a trustee by the banker thereafter.

7. Criminal procedure—*mere imperfections in instructions not reversible where instructions as whole are correct.* Mere imperfections in instructions as to what constitutes insolvency within the meaning of Crim. Code, sec. 25a, Cahill's Ill. St. ch. 38, ¶ 38, relative to embezzlement by a banker by acceptance of a deposit during insolvency, are not reversible where the instructions considered as a whole on that subject are not erroneous.

8. Criminal procedure—*when instructions on reasonable doubt erroneous in prosecution of banker for embezzlement.* It was reversible error in a prosecution of a private banker for violation of Crim. Code, sec. 25a, Cahill's Ill. St. ch. 38, ¶ 38, for accepting a deposit from a depositor not indebted to the bank, during the insolvency thereof, to give, at the request of the prosecution, long and complicated instructions on the questions of reasonable doubt and moral certainty, which contained incorrect statements of law and were argumentative, where the evidence on the questions of insolvency and the defendant's knowledge of such insolvency was highly conflicting and the credibility of important witnesses for the People on that subject open to serious doubt, especially where the instructions were identical in form with ones previously condemned by the Supreme Court.

9. CRIMINAL PROCEDURE—*instruction referring to failure of defendant to testify erroneous.* It was error in a criminal prosecution to give, at the instance of the People, an instruction which indirectly called attention to the fact that the defendant did not testify in the case.

10. CRIMINAL PROCEDURE—*expression in argument of personal opinion of counsel of defendant's guilt prejudicial misconduct.* It was reversible misconduct for a private prosecutor in his argument to the jury to go outside the record and to state that he would rather lose all the fee coming to him than have a miscarriage in the case and that he believed a miscarriage would be had in the case if the defendant was turned loose, especially where the case was closely contested and the evidence highly conflicting as to two essential elements of the offense charged.

Error by defendant to the Circuit Court of Champaign county; the Hon. GEORGE A. SENTEL, Judge, presiding. Heard in this court at the October term, 1923. Reversed and remanded. Opinion filed October 26, 1923. Rehearing denied October 18, 1923.

L. B. SAFFER, F. T. CARSON and HERRICK & HERRICK, for plaintiff in error.

ROY R. CLINE, State's Attorney, for defendants in error; O. B. DOBBINS, of counsel.

MR. PRESIDING JUSTICE HEARD delivered the opinion of the court.

For some years prior to December 31, 1906, H. J. Wiggins conducted a private bank known as The Citizens' Bank at Homer, Illinois. At that time he entered into a partnership agreement with plaintiff in error, Perley E. Wiggins, hereinafter called defendant, and under that agreement the bank was conducted until October 6, 1919, when H. J. Wiggins died, leaving defendant and Charles B. Wiggins his only legatees. On February 18, 1920, defendant and Charles B. Wiggins entered into partnership agreement and the Citizens' Bank was thereafter conducted under the control and management of defendant until November 23, 1920, when the bank closed its doors. Under the agreement Charles B. Wiggins, while actu-

ally a partner, for business reasons had no ostensible connection therewith. On November 22, 1920, the day before the bank was closed, Fred W. Broadbent made a deposit of $215.02 in the bank. November 23, 1920, defendant suggested to Judge Freeman that a trustee be appointed to take charge of the affairs and hold the property so that bankruptcy proceedings might be avoided and all creditors paid in full. In accordance with that suggestion a meeting of the creditors was called and held at Homer, December 4, 1920, at which meeting defendant and Charles B. Wiggins submitted a proposition to turn over to a trustee the assets of the bank together with other property of defendant and Charles B. Wiggins in liquidation of their indebtedness. This proposition was unanimously accepted and December 8, 1920, defendant and Charles B. Wiggins together with their wives entered into a trust agreement with Roy C. Freeman as trustee, whereby the property was turned over to Freeman as trustee, he to reduce the same to cash as expeditiously as the same could be done without sacrificing the value thereof and to pay the creditors of defendant and Charles B. Wiggins out of the net balance and the surplus thereof to defendant and Charles B. Wiggins.

Freeman accepted the trust and entered upon its execution. Defendant's evidence shows that the then value of the property turned over to the trustee was considerably greater than the amount of the liabilities of defendant and Charles B. Wiggins while the evidence for the prosecution tends to show that the value was considerably less than such liabilities.

At the September, 1921, term of the circuit court of Champaign county, defendant was indicted by the grand jury for a violation of section 25a of the Criminal Code [Cahill's Ill. St. ch. 38, ¶ 38] which provides:

"That if any banker or broker, or person or persons, doing a banking business, or any officer of any

banking company, or incorporated bank doing business in this State, shall receive from any person or persons, firm, company or corporation, or from any agent thereof, not indebted to said banker, broker, banking company, or incorporated bank, any money, check, draft, bill of exchange, stocks, bonds, or other valuable thing which is transferable by delivery, when at the time of receiving such deposit, said banker, broker, banking company or incorporated bank is in his or its knowledge insolvent, whereby the deposit so made shall be lost to the depositor, said banker, broker or officer, so receiving such deposit, shall be deemed guilty of embezzlement, and upon conviction thereof, shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto, may be imprisoned in the State penitentiary, not less than one nor more than three years.''

Defendant entered a motion to quash the indictment, which was overruled, whereupon he entered a plea of not guilty. When the case was called for trial he entered a challenge to the array of jurors which being overruled, a trial was had which resulted in a verdict finding defendant guilty and fixing his punishment at a fine of $430.04 and imprisonment in the penitentiary. A motion for a new trial was made and overruled and defendant duly sentenced by the court in accordance with the verdict, to review which action of the circuit court defendant has sued out a writ of error from this court.

Defendant claims that the court erred in refusing to quash the indictment on the ground that the indictment shows that the business was a partnership while the offense was charged against the defendant individually; that the value of the deposit was not alleged; that it did not allege a criminal intent; that it did not allege that the depositor demanded his deposit and that it was refused and that it did not allege that the bank was closed involuntarily.

The elements of the offense are as follows: (1) The

defendant must be doing a banking business; (2) he must receive money on deposit from a depositor not indebted to the bank; (3) defendant doing the banking business must be insolvent at the time of receiving such deposit; (4) the defendant must know that he is insolvent at said time; (5) the deposit must have been lost because of the insolvency. (*Meadowcroft v. People,* 163 Ill. 56.)

The indictment in this case consisted of three counts.

Each count charged that the defendant on the 22nd day of November, 1920, in Champaign county, Illinois, was a banker and doing a banking business as a member and manager of an unincorporated banking company, consisting of the defendant and Charles B. Wiggins, under the name and style of the Citizens' Bank of Homer, Illinois, and that the defendant, as manager of said banking company, "did then and there unlawfully, corruptly, wilfully, fraudulently and feloniously receive as a deposit from one Fred W. Broadbent (here the deposit is described) and which were then and there of the value of Two Hundred Fifteen Dollars and Two Cents ($215.02), and which were then and there accepted by him, the said Perley E. Wiggins, as and for a deposit in said bank.".

Each charged that Fred W. Broadbent was not then and there indebted to said banking company nor to the said Perley E. Wiggins and Charles B. Wiggins, nor either of them, and that on the date of receiving said deposit, said banking company was insolvent, and that the said members of said banking company were then, each of them, insolvent and that said Perley E. Wiggins at the time of receiving said deposit had knowledge and well knew that said banking company and said members thereof were each and all of them insolvent, whereby, because of such insolvency of said banking company and each and all of the members thereof, "the said deposit, so then and there made as aforesaid, was then and there lost to him, the said Fred W. Broadbent, and whereby and by force of the

statute in such case made and provided, the said Perley E. Wiggins is deemed to have committed the crime of embezzlement."

Section 408 of the Criminal Code [Cahill's Ill. St. ch. 38, ¶ 740] provides:

"Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of the statutes creating the offense, or so plainly that the nature of the offense may be easily understood by the jury."

The indictment in this case stated the offense so plainly that its nature could be readily understood by the jury. It followed the language of the statute and stated each of the five elements above specified as necessary to constitute the offense. The indictment was not defective in failing to comply with the defendant's contentions. (*Meadowcroft v. People, supra; People v. Munday,* 293 Ill. 194; *People v. Dubia,* 289 Ill. 280; *People v. Paisley,* 288 Ill. 310.)

Defendant contends that the court erred in refusing to quash the indictment for the reason that O. B. Dobbins, an attorney of Champaign, who was not the State's Attorney, Assistant State's Attorney, Attorney General or Assistant Attorney General, but was an attorney paid by some of the creditors, and whose firm had represented Charles B. Wiggins in controversies with defendant in matters growing out of the settlement of the estate of their father, was allowed to appear before the grand jury and examine the witnesses in the case.

State's Attorneys and the Attorney General are officers, sworn to perform their duty, and it is a part of their duty to protect the constitutional rights of persons accused of crime and so far as lies in their power to see that no innocent man is unjustly indicted or convicted, while a lawyer not having been officially sworn, performing the functions of such officer, frequently does not feel the restraint of the official oath

and does not feel obligated to respect the rights of a person accused of crime. ' While the practice of allowing private prosecutors, paid by parties interested in securing the conviction of a defendant, to appear before the grand jury and examine the witnesses is to be depreciated, yet it sometimes happens, by reason of the inability of the Attorney General to lend aid to the State's Attorney and the failure of the county board to provide sufficient assistance, that the ends of justice might be defeated were private parties not allowed to furnish the needed aid.

In the present case the State's Attorney entered a motion, "For an order of court permitting O. B. Dobbins to assist the State's Attorney in the prosecution of this cause," and the order was entered by the court.

In *People v. Hartenbower*, 283 Ill. 591, it was said:

"It is further insisted it was error to permit special counsel to assist the State's Attorney in the prosecution of plaintiffs in error and also to overrule the motion of plaintiffs in error to quash the indictment, for the reason it appears that said special counsel, Lee O'Neil Browne, appeared before the grand jury in connection with the State's Attorney and assisted him in the examination of witnesses before that body in relation to the matters on which the indictment against them was returned.

"As to the first contention, the power of the court to permit special counsel employed by private interests to assist the State's Attorney in the prosecution of the accused has frequently been passed upon by this court and in each instance the right of the court to do so has been sustained. * * * The current of authority in other jurisdictions where no statutory regulations prevail, as well as the best-reasoned cases, clearly supports the view that the appearance of an unauthorized person before the grand jury, where he is not present during their deliberations, and does not attempt to influence their actions, will not invalidate the proceedings unless prejudice is shown."

We are of the opinion that the court did not err in refusing to quash the indictment.

It is contended by appellant that the court erred in overruling defendant's challenge to the array. This challenge was based on affidavits showing that the jury list prepared by the Board of Supervisors of Champaign County at its September, 1921, meeting, from which the panel to which the challenge was interposed was drawn, contained 2,292 names and an affidavit which showed that the registration books of Champaign county then on file in the county clerk's office of Champaign county, exclusive of four precincts, the books for which were missing, showed a registration of 28,109 voters, and that in those four precincts at the November, 1920, election 1,590 votes were cast "which according to said records make a total of 29,699 legal voters in Champaign county."

Section 136 of chapter 46 of the Revised Statutes of Illinois [Cahill's Ill. St. ch. 46, ¶ 180] provided that in making the registry lists the registry board (outside of cities having an election commission) shall "enter in said lists the names of all persons residing in their election districts whose names appear on the poll list kept in said district at the last preceding election" and in addition thereto "the names of all other persons who are well known to them to be electors in said district; and the names of all persons * * * who have died or removed from the district shall be omitted from the register."

It is a matter of common knowledge that between the time of the making of said registry lists and any given time thereafter persons die or move away from a precinct and others become legal voters so that at no time, not even on election day, does the registry list accurately state the number of legal voters in a precinct.

It is a well-established rule of evidence that every official charged with an official duty is presumed to have performed that duty in any given case until the

contrary appears from the evidence. (*New York Cent. R. Co. v. Lehigh Stone Co.*, 220 Ill. App. 563; *Paden v. Rockford Palace Furniture Co.*, 220 Ill. App. 534; *State v. Bank of Neosho*, 120 Mo. 161, 25 S. W. 372.) When the Board of Supervisors of Champaign County prepared the jury list containing 2,292 names only, the presumption that they performed their duty is not overcome by proof that the registry lists of the county contained more than ten times that number of names.

It is claimed that the court erred in sustaining objections to certain questions propounded to prospective jurors during their examination on their *voir dire*. The questions were:

"Q. If the proof in this case shows that the deposit made by Mr. Broadbent, as charged in this indictment, has been repaid to him or to a trustee of his selection by the defendant in this case by the transfer of cash, bonds and real estate, so that said deposit, or any part thereof, was not lost to the witness, Broadbent, the depositor, Broadbent, then it would be your duty as a juror to find the defendant not guilty; would you follow that rule of law and find the defendant not guilty in that state of the proof?

"The law further is if, after this bank closed its doors and before this indictment was returned, this defendant turned over property to a duly authorized committee with the knowledge and consent and approval of this prosecuting witness and of his selection, then and there made settlement with his creditors, including the prosecuting witness Broadbent, then there can be no conviction in this case?

"Q. The law further is, after this bank closed its doors and before this indictment was returned, if this defendant made settlement with his creditors, whereby they received property in full of all demands against him, then there can be no conviction in this case, if those facts are proven in this case, it will be your duty to find the defendant not guilty?"

The court did not err in sustaining objections to these questions. The statements of law contained in

the questions were not correct statements. Neither is it error to deny permission, on the preliminary examination of jurors, to obtain from them by means of hypothetical questions a prejudgment of the case and a statement in favor of which party they would decide in a supposed state of the evidence. (*Chicago & A. R. Co. v. Fisher,* 141 Ill. 614.)

It is contended by defendant that the court erred in allowing auditors of the bank's books to testify as to the results of an investigation made by them. This was not error. (*People v. Sawhill,* 299 Ill. 403; *People v. Hartenbower, supra.*)

It is contended by the defendant that the defendant and Charles B. Wiggins having turned over the property which they did to a trustee and the trust agreement having been accepted by the creditors, including Broadbent who attended the creditors' meeting and voted in favor of the acceptance of defendant's proposition, that the deposit in question was not lost and that the instructions of the court on that subject were erroneous.

In *Meadowcroft v. People, supra,* it is said:

"The crime created by the statute is consummated when the insolvent bankers fraudulently receive the deposit, and by their failure, suspension or involuntary liquidation, by reason of insolvency, the depositor is deprived of the benefit of his deposit, or such portion of it as has not already been paid back to him or upon his checks. The depositor is then—at that time —deprived of his contract right to have the money refunded upon demand or paid out upon checks drawn by him, and being deprived of this right the deposit, within the purview of the statute, is then 'lost to the depositor.' This meaning placed upon the word 'lost' is not unauthorized, for the rule is, that in construing a statute the court is not restricted to the primary meaning of a word used, where, from a consideration of the whole and every part of the statute, it is plain that the word is used in a different sense. (*City of Springfield v. Green,* 120 Ill. 269.)"

Objections are pointed out by defendant to instructions given by the court upon the question as to what constituted insolvency within the meaning of the statute. This statute has been frequently before the Supreme Court for construction since the case of *Meadowcroft v. People, supra,* and its provisions thoroughly explained. While some of these instructions may contain imperfections not called to the attention of the court in *People v. Hartenbower, supra,* and *People v. Munday, supra,* yet we are of the opinion that when all of the instructions upon this subject are considered as a whole there is no reversible error and that any of the errors not going to the merits of the instruction will be avoided upon a retrial of the case.

As to the first and second elements above specified as necessary to constitute the offense charged there is no question. Defendant was engaged in doing a banking business and he received a deposit from Broadbent who was not indebted to the bank. As to a third element under the authorities cited we must hold that the deposit was lost to Broadbent. But the questions of fact as to whether or not the persons doing the banking business were insolvent and if insolvent whether or not defendant knew of such insolvency were closely contested questions under the evidence in the case and, it devolving upon the State to prove beyond a reasonable doubt these elements in order to secure a conviction, it was therefore essential that the jury be accurately instructed; that nothing should be done by counsel for the prosecution to mislead them and that the conduct of such counsel should not be such as to arouse the passion or prejudice of the jury and so deprive defendant of his constitutional right of a fair and impartial trial before a fair and impartial jury.

At the instance of the prosecution the court gave to the jury several instructions on the question of reasonable doubt although this practice has repeatedly,

in severe terms, been condemned by the Supreme Court. Among them was the following:

"The court instructs the jury that the meaning of the phrases 'reasonable doubt' and 'moral certainty' is difficult to put in words. It will be observed that in order to sustain a conviction it is not necessary to establish the guilt of a defendant to an absolute certainty, but only to a moral certainty. Absolute certainty is seldom obtainable in any case where there is a conflict of proof; nor is it necessary that the guilt of a defendant be established beyond all doubt, but only beyond all reasonable doubt, for it is seldom in matters of serious controversy that a question can be decided beyond every kind of doubt. Nor will the fact itself that the question of guilt or innocence submitted to you is difficult of solution constitute a reasonable doubt, if by careful consideration and deliberation that solution may, in fact, be established according to law. If you believe the defendant has been proven guilty under the law and the evidence beyond a reasonable doubt you must convict him, even though doubts remain in your minds which do not amount to reasonable doubts. So, also, you must convict him if his guilt is established to a moral certainty, but though it be not established to an absolute certainty."

This instruction contained statements which are not correct. It is argumentative and therefore improper. (*People v. Garbaciak*, 306 Ill. 254.) The only purpose it could serve would be to mystify the jury and render obscure the meaning of a plain and simple term. A reasonable doubt is a reasonable doubt and the giving of numerous instructions on this subject in no way tends to enlighten the jury as to the law of the case. What is said in *People v. Miller*, 292 Ill. 318, on this subject is applicable here. It was there said:

"The court gave for the prosecution four instructions explaining the meaning of the words 'reasonable doubt.' They cover two and a half pages of the printed abstract and are in the usual form in which such instructions have been given in many cases. No case has been reversed, alone, because of giving such

instructions but giving them has been condemned in a number of decisions. In *People v. Cotton,* 250 Ill. 338, it was said several instructions explaining the meaning of reasonable doubt did not make the meaning of the term more clear than the words themselves but that a mere redundance would not justify a reversal. In *People v. Harrison,* 261 Ill. 517, it was said giving several instructions stating in varying language a single rule of law is improper, as tending to unduly impress the single principle announced on the mind of the jury to the exclusion of other questions of legal importance. In *People v. Wallace,* 279 Ill. 139, such instructions were again condemned as improper, the court saying: 'Two pages of discussion of the doctrine of reasonable doubt are not illuminating but the reverse. Two lines are better. The effect upon the jury of the instructions brought together in this record upon the question of reasonable doubt could have been only to induce them to believe that in the mind of the court there was grave fear that the jury would think there was a reasonable doubt of defendant's guilt when there was none.' In *People v. Moses,* 288 Ill. 281, it was said such instructions were unnecessary because there is no better definition of the meaning of reasonable doubt than the words themselves, but they had never been regarded as so prejudicial as to alone warrant the reversal of a judgment of conviction. We cannot doubt such instructions in this case had a material influence on the minds of the jury. The case, on the whole testimony, was admittedly highly conflicting. The credibility of most important witnesses for the People was open to the most serious doubt, and the language quoted from *People v. Wallace, supra,* is directly applicable.''

In *People v. Belle,* 308 Ill. 593, it was said:

''This court has held that it is doubtful whether any better definition of the term 'reasonable doubt' can be found than the words themselves, and that that term has no other and different meaning in law than it has when used in ordinary transactions or affairs of life. (*People v. Barkas,* 255 Ill. 516; *People v. Fox,* 269 Ill. 300.) This court has many times intimated that the

giving of many instructions on reasonable doubt might result in so much confusion as to cause the reversal of a judgment of conviction.''

The court at the instance of the People gave to the jury the identical instruction which the Supreme Court called unintelligible in *People v. Andrae,* 295 Ill. 461, and in discussing which the court said: ''Just what is meant by the last phrase of this instruction we are unable to determine.'' This instruction was also held erroneous in *People v. Sawhill,* 299 Ill., *supra,* and *People v. Heard,* 305 Ill. 319, in which latter case the court said:

''The fact that the prosecutor tendered to the court these erroneous and duplicate instructions, so often and recently condemned in the opinions of this court, shows a lack of familiarity with the court's decisions and with the law applicable to the case at hand.''

This instruction in this case was particularly objectionable for the reason that it indirectly called attention to the fact that the defendant did not testify as a witness in the case.

It is contended by plaintiff that the verdict of the jury was not in proper form and was not responsive to the issues. We do not consider the point well taken.

It is contended by the defendant that defendant was prejudiced by the conduct of the special prosecutor in his argument to the jury and that in such argument he went outside of the record; that he expressed his personal opinion that the defendant was guilty and that he appealed to the prejudices and passions of the jury; that during the argument objections were made to several statements made by him as not being supported by the evidence and upon objections being sustained the remarks were withdrawn; that he said:

''I would rather lose all the fee coming to me in this case than to have a miscarriage of justice, and I believe a miscarriage of justice would be had in this case if this man was turned loose.''

We have read the entire argument of the special

prosecutor as found in the additional abstract furnished by the State and without going into detail find much improper argument. In fact some of the most improper statements were not objected to at the time and so are not now to be considered.

From a careful consideration of the entire record we are of the opinion that the case on the testimony was of such character as to require the record to be free from error in the conduct of the trial and that the erroneous instructions and improper argument were such as to be naturally prejudicial to the defendant.

The judgment of the circuit court is therefore reversed and the cause remanded.

*Reversed and remanded.*