STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. KENNETH JOHN MANLEY, DEFENDANT-APPELLANT.

Argued January 21, 1969—Decided June 27, 1969.

*Mr. J. Roger Conant* argued the cause for appellant.

*Mr. Arthur J. Timins,* Assistant Prosecutor, argued the cause for respondent (*Mr. Leo Kaplowitz,* Union County Prosecutor, attorney).

The opinion of the court was delivered by

FRANCIS, J. Defendant Manley was indicted for murder. At his trial the State sought a first degree murder verdict with a life imprisonment recommendation. The jury found him guilty of murder in the second degree. On this direct appeal under former *R. R.* 1:2–1(*c*) the validity of the conviction is challenged on two grounds: (1) Defendant's confession was erroneously admitted in evidence; and (2) the trial court erred in refusing to allow defense counsel to put certain questions to prospective jurors on the *voir dire* examination. For reasons to be stated we find no reversible error on either ground.

I

*Admissibility of the Confession*

The charge here arose out of the senseless beating of one John Schlagenhaft, a derelict, on June 16, 1966, at about 9 P.M. in a city park in Elizabeth, N. J. Four young men participated, Manley, Zelichowski, Heim and Bigler. Manley was on parole at the time. He had been convicted in 1963 of atrocious assault and battery. At the trial there was a dispute as to whether there were two distinct attacks, the second one occurring a short time after the first and involving only two of the individuals, Heim and Bigler. The police came upon Schlagenhaft at 12:30 P.M. on June 17, about 15 hours later. He was still alive and lying about 100 feet from the place of the initial onslaught. He was nude, except for a tie, shirt and socks and his body bore cigarette burns as well as evidence of a severe beating. There was no testimony, however, that the group of four had stripped Schlagenhaft or inflicted the cigarette burns on him. He was then taken to the hospital where he died as the result of the injuries and an associated pulmonary edema.

Manley was taken into custody as a suspect around 8:30 P.M. on June 30, 1966 and brought to the Elizabeth Police Station for questioning. The trial court found that he was

given the *Miranda* warnings immediately. *Miranda v. Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed. 2d* 694 (1966). According to the detectives Manley said he understood the advice he had been given and did not wish to have a lawyer. Beginning at approximately 9 P.M. he was interrogated for about 40 minutes, during which time he admitted being in the park with the three other men, but he denied knowledge of the criminal incident. At the end of that questioning, he was left in the main room of the detective bureau. Two detectives returned around 1:45 A.M. After one of them repeated the warnings, Manley was told that Heim had admitted involvement in the beating of Schlagenhaft and had implicated him. Upon being shown the written confession, Manley orally admitted having participated in the attack on Schlagenhaft.[1] A stenographer was summoned and about 20 minutes later the taking of a written statement began.

The detective in charge of taking the written statement testified that he gave Manley a mimeographed sheet containing the warnings which Manley read and said he understood. Another copy was given to the stenographer. The statement was then taken and upon completion was signed by him. The statement also contained a waiver of his *Miranda* rights which he read before any of the inculpatory matter was typed.

At the trial Manley did not charge that he was struck or beaten or abused in any way before inculpating himself. His claim was that he was not advised of his *Miranda* rights until after his oral statement had been given, and just before the written confession began. The trial court found that

---

[1] Subsequently Heim pleaded *non vult* to second degree murder; Zelichowski and Bigler were convicted of atrocious assault and battery (apparently the jury found that there were two separate attacks upon Schlagenhaft and that these two defendants participated only in the first attack which the jury could not say beyond a reasonable doubt was causally related to the death). See, *State v. Zelichowski,* 52 *N. J.* 377 (1968).

the officers had met the requirements of *Miranda* from the beginning of the questioning and that the confession was voluntarily and understandingly given. Review of the testimony satisfies us beyond a reasonable doubt that the finding was correct. A significant factor in that connection is that the *Miranda* decision, with its dramatic impact on police confession-taking techniques, had come down from the United States Supreme Court just two weeks before Manley's confession was taken. Each of the officers involved in the interrogation said that he had in his possession at the time a mimeographed outline of the required warnings. Their obvious awareness of the *Miranda* rule gives their testimony an added ring of truth and we accept it as did the trial court.

## II

### The Voir Dire Examination of Jurors

Although the indictment was for murder, the State did not demand the death penalty. Yet the interrogation of prospective jurors was excessively prolix and eight days passed before the jury box was filled. The situation was not unusual. Records that have come to us on appeal in recent times, in criminal cases particularly, reveal a trial-bar practice of *voir dire* examination of jurors at inordinate length and on improper subjects. The prevalence of the practice, with its unnecessary trial delays, and its adverse effect upon already heavily burdened trial calendars, has moved us in this case to draw some restrictive guidelines for future control of the jury-drawing process. Of course in doing so we shall deal with the specific objection to the limitation imposed by the trial court upon defense counsel's questioning.

As has been noted above, Manley had been convicted previously of atrocious assault and battery arising out of beating a young woman. On the first day of the *voir dire* defense counsel asked questions centering about the previous conviction of crime. A typical question follows:

"Q. If during the course of this trial there appears in evidence or it becomes evident to you that this defendant has once before been convicted of a crime, in fact, atrocious assault and battery, and that this element is admitted under the Judge's instructions for the purpose — for a limited purpose, would you be able to follow the Judge's instructions and use it only for that limited purpose?"

Two prospective jurors who were asked the question (without objection) were accepted. At the end of that day, the trial judge announced he would not allow further questions of the same kind unless counsel would indicate an intention to put defendant on the witness stand in his defense. A long colloquy ensued in which the reason for the ruling became clear. The judge pointed out that if the defendant elected not to testify, the fact of his previous criminal conviction would not become evidential in the case. So, if the jurors were informed before their selection of the 1963 atrocious assault and battery and thereafter defendant did *not* take the stand, they would have in their minds facts probably prejudicial to the defendant. And he indicated concern as to whether the jurors would eliminate such facts from their minds while deliberating upon their verdict — even if he instructed them not to consider any such *voir dire* questions or the facts contained therein. He was also troubled that in spite of his instructions to be given at the end of the case, the jurors would wonder why, after Manley had admitted the previous conviction in the preliminary questioning, he had not taken the stand in defense of or to deny the presently charged similar offense. The judge felt that since the fact of previous conviction would not get before the jury if defendant did not testify, defendant should not be allowed to endanger himself and his case by volunteering the damaging data. In short, he considered himself obliged to protect defendant against the probable harmful consequences of his own mistake. During the discussion defense counsel's position was that he could not say whether defendant would testify, no decision having been made on the subject. Consequently the judge ruled over objection that he would not

permit any further questions to prospective jurors which referred to defendant's previous atrocious assault and battery conviction.

In addition the judge felt he had to eliminate from the case the already existing possibility of prejudice stemming from defendant's acceptance of the two jurors who had been informed of the previous criminal conviction. Accordingly he excused them and instructed counsel to make a fresh start the next morning. This was done and ultimately the box was filled with acceptable jurors who had not been informed of the defendant's conviction.

As it turned out, defendant did take the stand in his defense at which time the previous conviction of atrocious assault and battery was introduced by his attorney on direct examination. At the conclusion of the case, the court in its charge dealt with the matter in classic fashion, advising the jury that such evidence was admitted only on defendant's credibility, and that it was not to be and could not be considered as evidence of guilt of the crime for which he was being tried. It is conceded that the charge furnished the proper advice and instruction to the jury on the matter.

On this appeal defendant claims the trial court abused its discretion in refusing to allow him to inform prospective jurors of defendant's previous criminal conviction and to ascertain from them whether they could and would follow and apply the court's instruction that such evidence was admitted for a limited purpose and should be used by the jury only for that purpose. He claims the ruling denied him a fair trial because of the prejudicial impact that evidence of the similar prior conviction was liable to have on the minds of the jurors when determining guilt. In his brief he concedes that a risk was being taken in putting the questions if he did not take the witness stand. He asserts he was prepared to take the risk and since he was the only one who could possibly be hurt by the inquiry, he should have been allowed to pursue it. He maintains also that before making a decision to testify in defense, he was entitled to

satisfy himself by a probing interrogation that jurors who were accepted would follow the court's direction as to the only proper evidentiary force of his previous conviction.

Obviously, if a defendant does not testify, previous conviction of crime is not admissible to attack his credibility. Compare, *People v. Sanchez,* 35 *Cal.* 2d 522, 219 *P.* 2d 913, (1950). In this event no charge of error could be predicated upon a refusal to allow defendant to interrogate jurors about such conviction. If he is allowed to admit a previous conviction of crime on *voir dire* questioning and then he does not testify, he incurs an unnecessary and perhaps substantial risk of prejudice to his defense. Consequently we agree with the trial court that if a defendant does not testify after informing the jurors on the *voir dire* of his previous conviction of a similar crime, he may have exposed himself to a greater risk of prejudice than would normally follow a failure to testify. Psychologically it is dangerous to assume that under ordinary circumstances jurors do not draw an adverse inference on the subject of guilt if testimony directly inculpating a defendant stands uncontradicted when the case is submitted to them for decision. It is even more dangerous to assume that this inference will not be aggravated if, during the process of selecting the jury, the defendant informs the prospective jurors that he has a criminal record. Whether he should be allowed to do this, without stating at least a presently existing intention to testify, is a matter which in our judgment is committed to the discretion of the trial judge. See *State v. Sullivan,* 43 *N. J.* 209 (1964) ; *N. J. S.* 2A:78-4; *R. R.* 4:48-1. Defendant recognized this for he suggests that the issue for determination is whether under the circumstances present the court abused its discretion in limiting the questioning of the prospective jurors in the manner described.

Research has disclosed no case in New Jersey dealing with the propriety of *voir dire* interrogation with respect to a juror's willingness or ability to use evidence of the defendant's previous conviction of crime only in evaluating his

credibility. Other jurisdictions have considered the problem. For example, in *People v. Lexow*, 23 *Ill*. 2d 541, 179 *N. E.* 2d 683 (1962) this question was asked:

"If, during the course. of this trial, sir, you were to learn that these defendants have been convicted of a felony, would that fact start you off with a feeling of prejudice to the extent that you might feel that because they were guilty once before they would have to be guilty in this case?"

The juror replied:

"I don't know how to answer the question."

The trial court declared the question improper and instructed the jury to disregard it. The ruling was sustained on appeal. In *People v. Louzon*, 338 *Mich*. 146, 61 *N. W.* 2d 52, 57 (1953) the questions were:

"If, in the course of this trial it were to develop that any one or all of these defendants had been convicted of former offenses, would that fact prejudice you against them in any degree?"
"Do you feel that you can determine the guilt or innocence of these defendants on a basis solely of facts presented here pertaining to this case only, and be entirely uninfluenced by any evidence of former police records?"

Their exclusion was upheld primarily on the ground that the presentations failed to recognize that if the defendants testified, the jurors could consider previous convictions in judging their credibility as witnesses.

In *Manning v. State*, 7 *Okl. Cr*. 367, 123 *P*. 1029, 1030 (1912) the question was:

"Mr. Kelly, if it should develop in the trial of this case that the defendant had at one time prior in his lifetime been convicted of manslaughter in the second degree, and that the case was now pending in the Criminal Court of Appeals of this state, would that have any effect or bearing upon you in rendering a verdict in this case?"

The trial court's refusal to permit the inquiry was approved because if the conviction were shown on cross-examination

of the defendant, it would have probative force on the issue of his credibility; also, if defendant offered evidence of good character for peace, it would be competent for the state to show the conviction on cross-examination or in rebuttal. Therefore the conviction would have a legitimate "effect or bearing" upon the jury's deliberations in the case. Thus the form of the question was improper.

On the other hand, in *People v. Ranney*, 213 *Cal.* 70, 1 *P.* 2d 423 (1931) after counsel advised the court that defendant intended to testify in his own behalf, he endeavored to interrogate prospective jurors as to whether they would presume guilt from the fact of defendant's previous conviction of crime. The prosecutor's objection was sustained. The defendant did testify and his earlier convictions were proved. His conviction was reversed on appeal. The Supreme Court of California held the questioning was proper and should have been allowed. It went on to say that while, if standing alone, the error might not justify a reversal, yet, when taken with other errors in the instructions to the jury reversal was required. In discussing the matter the court said:

"Whether or not a prospective juror will be influenced by knowledge of any such previous offense, whether he will be governed by the rule of law which rigidly excludes such a consideration, and whether or not if chosen as a juror, he will obey an instruction by the court to dismiss from his mind all consideration of any separate and different offense of which he may have obtained knowledge in any way, except for purposes of impeachment, is a question of vital importance to an accused person in the circumstances of the defendant here." 1 *P.* 2d at 425.

The questions, however, would have to be in proper form. To ask the juror if the conviction "makes no impression" on him would be objectionable. *People v. Knight*, 44 *Cal. App.* 2d 887, 113 *P.* 2d 226, 229 (1941).

In *People v. Hosier*, 132 *App. Div.* 146, 116 *N. Y. S.* 911 (1909), affirmed 196 *N. Y.* 506, 89 *N. E.* 1107, the defendant was indicted for grand larceny in the first degree. To prove guilt the state was required to establish two elements:

(1) that defendant was guilty of the specific theft charged, and (2) that he had been convicted previously of grand larceny in the second degree. It being apparent therefore that the state would prove defendant's first conviction, his counsel attempted to question the veniremen as to whether they would be influenced in arriving at a verdict of guilt or innocence by the former conviction. On objection by the state the trial court refused to allow the inquiry and on appeal defendant's conviction was set aside. The Appellate Division ruled that since the state had to prove the prior conviction irrespective of whether defendant testified, the exclusion was erroneous. It said:

"If a juror was so constituted that in determining the question of the guilt or innocence of a defendant of the crime charged he would not be able to eliminate the impression of guilt produced upon his mind by the fact of a former conviction so that it would influence his determination of the guilt of the defendant of the crime charged, he could not try that issue impartially and without prejudice to the substantial rights of the defendant; * * *." 116 *N. Y. S.* at 914.

See also *Staggs v. State,* 55 *Okl. Cr.* 268, 29 *P. 2d* 135 (1934).

█ █ As we have said, both our existing practice rule *R. R.* 4:48–1, and the statute *N. J. S. 2A*:78–4, vest discretion in trial courts with respect to preliminary questioning of prospective jurors. The rule applies to questioning about a defendant's previous conviction of crime. In the unusual case before us, if defendant had indicated a present intention to testify in his defense, it would have been within the court's discretion (as an exception to the general restrictions outlined herein) to permit *voir dire* interrogation as to whether jurors could and would follow an instruction by the court that defendant's earlier criminal conviction could not be considered as any evidence whatever of his guilt of the offense for which he was being tried, and could be considered by them only in evaluating the truthfulness of his testimony at the present trial. We recognize the almost unavoidable psychological impact on the layman-juror of evidence of a

defendant's conviction of similar crimes. It may be a lot to ask of him that he put aside an almost common impulse to regard earlier proven proclivity toward commission of similar crimes as some indication of guilt of the offense presently charged against him. But as long as former conviction of crime remains admissible on the cross-examination of the accused "or otherwise" (*N. J. S.* 2A:81–12), jurors have to be told their consideration of such conviction must be limited entirely to the issue of his credibility. And, in administering the criminal law the courts must rely upon the jurors' ability and willingness to follow the limiting instruction without cavil or question. See, *State v. Obstein,* 52 *N. J.* 516, 527 *n.*1 (1968); *State v. Hawthorne,* 49 *N. J.* 130 (1967); *State v. Cormier,* 46 *N. J.* 494, 508 (1966). As suggested hereafter, however, we believe use of hypothetical questions on subjects usually covered in a court's charge should be supervised carefully and rarely allowed.

 But, here Manley would not even say he had a present intention of becoming a witness in his own behalf. As a result the conscientious trial judge in the interest of avoiding the danger of prejudice to him, self-inflicted or otherwise, declined to allow the inquiry to be pursued. As revealed by the colloquy with counsel he was acutely aware that proof of a prior conviction of crime, especially of a similar one, is fraught with danger of prejudice to a defendant on the issue of guilt. But, he knew also that ordinarily a defendant subjects himself to that risk only if he becomes a witness. In such event, the sole palliative provided by law is the judge's instruction or charge to the jury limiting the use of the conviction to the issue of credibility alone. Although judges expect, as they must if our judicial system is to survive, that conscientious jurors will respect and follow the instruction, it is not unseemly for judges in the exercise of discretion to prevent exposure to the risk entirely unless at the time the problem arises the exposure appears to be a necessary incident of the trial. So here, the trial judge obviously felt that by refusing to allow defendant to admit

the previous conviction while questioning prospective jurors, he was protecting defendant against a possible double risk of prejudice. That is, he felt (1) that as soon as defendant unnecessarily admitted his guilt of a previous similar offense, an inference adverse to his defense in this case would probably arise, and (2) that if defendant thereafter did not take the witness stand in the face of uncontradicted evidence inculpating him in the offense being tried, it would be doubly difficult to overcome a jury impression that defendant's actions in their totality indicated a consciousness of guilt. In the judge's view such danger could be avoided or at least minimized by restricting the *voir dire* examination in the manner described. Under the circumstances we cannot say the ruling constituted an abuse of discretion.

Furthermore, the evidence of Manley's guilt was overwhelming. In his testimony and his voluntary confession he admitted participation in the attack on the victim. There was ample corroborating evidence. The trial court fairly and adequately instructed the jury on the subject of their duty to use the evidence of defendant's criminal record on the issue of credibility alone. There can be no assumption that the jury did not faithfully follow the admonition. See *State v. Obstein, supra; State v. Cormier, supra; Clark v. Piccillo,* 75 *N. J. Super.* 123, 133 (*App. Div.* 1962). Our study of the record satisfies us that defendant suffered neither error nor prejudice from the curtailment of the interrogation of the jurors. *People v. Cole,* 8 *Mich. App.* 250, 154 *N. W. 2d* 579 (1967); *People v. Louzon, supra,* 61 *N. W. 2d,* at 57; *People v. Lexow, supra,* 179 *N. E. 2d,* at 684; *People v. Knight, supra,* 113 *P. 2d,* at 229; *Staggs v. State, supra,* 29 *P. 2d,* at 136.

## III

### *The Voir Dire Generally*

The English common law has never known or permitted the *voir dire* examination of jurors as it is practiced in the

United States. In England the rule has always been that such examination may be conducted only after a challenge for cause has been interposed, and then in support of the challenge. And it has been said that in selecting the jury in the English courts the challenge of a juror is almost as rare as the challenge of a judge in the United States. Moore, "Voir Dire Examination of Jurors: I. The English Practice," 16 *Geo. L. J.* 438, 445, 453, *n.* 53 (1928) [hereinafter cited as *Moore*]; Note, "Voir Dire Examination — Court or Counsel," 11 *St. Louis U. L. J.* 234, 235 (1967); Note, "The Jury Voir Dire: Useless Delay or Valuable Technique," 11 *S. Dak. L. Rev.* 306, 308 (1966); Comment, "Examination of Jurors Prior to Challenge," 31 *Yale L. J.* 514 (1922); *Millar, Civil Procedure of the Trial Court in Historical Perspective,* 289, 292 (1952). One basic reason was the fundamental confidence in the English juror's fairmindedness vitalized by his oath. *Moore, supra,* at *p.* 453.

Originally the English rule was followed in this country. *Millar, supra,* at *p.* 292; Note, 11 *St. Louis U. L. J., supra,* at *p.* 435; Annotation, 99 *A. L. R. 2d* 7, 16 (1965). This was true also in New Jersey. *State v. Zellers,* 7 *N. J. L.* 220, 222–223 *(Sup. Ct.* 1824); *Clifford v. State,* 61 *N. J. L.* 217 *(E. & A.* 1897). Efforts to engage in preliminary examination of prospective jurors were rebuffed. For example in *Zellers,* a murder case, defense counsel endeavored to inquire of a juror about bias toward the prisoner. Chief Justice Kirkpatrick said "You cannot ask that question. If you mean to make a challenge you must do it in regular form, and then prove it in regular form: our books know of no other way." 7 *N. J. L.,* at 222. When counsel suggested that such examination had been repeatedly conducted, the Chief Justice replied:

"It is true we have slipped into the practice, but on looking into it I am satisfied it is not the true way: the only proper way is, to make the challenge, and then prove it upon oath." 7 *N. J. L.* at 223.

Approximately seventy-five years later the Court felt the same way. In *Clifford v. State, supra,* Chief Justice Magie sharply rejected a similar attempt by counsel to question a juror generally to obtain information on which he "could intelligently exercise the right of peremptory challenge * * *." 61 *N. J. L.,* at 222. The Chief Justice said:

"I think it would be impossible to exaggerate the evil consequences which would follow the adoption of the contrary practice. If the court is bound to permit counsel to engage in a public conversation with each juror, for the purpose of enabling counsel to determine whether he should interpose a challenge or not, what control has the court over the examination? Where can it draw the line between proper and improper questions, when the purpose of the talk is not to prove a fact or to establish a challenge, but only to furnish counsel information? How is a juror to be protected against improper questions, except by his refusal to answer them? And if he refuses to answer proper questions, what power has the court to compel him to answer? Or, if a juror is anxious to escape service, how can it be discovered whether his answers, not given under the sanctity of an oath, are true or false? Such a practice would introduce into this state, happily so far free from them, the unseemly, vexatious and expensive delays in impaneling juries in criminal cases which have been a reproach to the administration of criminal justice in some other states." 61 *L. N. J.* at 223.

In the course of time, however, through legislative or judicial action, it became the prevailing view in this country that a party could examine prospective jurors without having any previous knowledge concerning them, for the purpose of deciding upon the exercise of peremptory or cause challenges. The reason for the change was perhaps best summarized by Roger D. Moore in this fashion:

"Cut off politically from the older English tradition and confronted with differences in social conditions growing largely out of heterogeneity of population and extent of territories, it is therefore not surprising that our courts have countenanced such changes in jury trials as to enable parties to procure information about jurors without being put to the expense and inequality of extra-curia investigations." Moore, "Voir Dire Examination of Jurors: II The Federal Practice," 17 *Geo. L. J.* 13, 36 (1928).

The rule change came about in New Jersey by legislative enactment. *Chapter* 151, *L.* 1911, provided that in civil or criminal causes all challenges to jurors for any cause whatever may be made at any time before the juror is sworn. It provided also that in civil cases each party shall be allowed six peremptory challenges, and that either party could question a juror after his name was drawn from the box for the purpose of eliciting information upon which he may determine whether to interpose such a peremptory challenge, and that "Within the discretion and under the control of the court, such questions shall be permitted for the purpose of disclosing whether or not the juror is impartial as between the parties to the suit and without interest therein or in the result thereof." *L.* 1911, *c.* 151, § 3, *p.* 220. The quoted portion of the statute was held to apply to civil cases alone. *Lamble v. State,* 96 *N. J. L.* 231, 234 (*E. & A.* 1921).

Oddly enough, the common law prohibition against *voir dire* examination of jurors in criminal cases [except cases where the death penalty might be imposed (*L.* 1931, *c.* 298, *p.* 741)] was continued in 1948 by *Rule* 2:7–2(*b*) when the Rules of Criminal Practice were adopted upon revision of the court structure following the 1947 *Constitution.* The rule provided in the ancient language:

"All challenges shall be tried under supervision of the court. * * * Individual jurors may be challenged for principal cause or to the favor, when challenge is to the polls. The challenge is to be made before the swearing of the juror. Except in murder cases, a juror may not be put upon his voir dire and examined as to his competency unless a challenge for cause be first interposed."

A few months after adoption of this rule, it was criticized in the New Jersey Law Journal. 72 *N. J. L. J.* 105 (1949). The article said:

"In this day of the renaissance of our practice it is doubtful that many members of the bar actually know the technical meaning of 'challenge for principal cause or to the favor, where the challenge is to the polls.'

\* \* \* \* \* \* \* \*

It seems plain that Rule 2:7-2, represents an anachronism in the midst of all our streamlining. The requirement that challenge for cause must be interposed and supported before a juror can be examined under oath, to say nothing of informal questioning, has been winked at in the trial courts at least since some time prior to 1824.

\* \* \* \* \* \* \* \*

It is therefore suggested that the common law rule be relegated to the past and one vested with contemporary adequacy be adopted. There is no need, of course, to change the procedure in murder cases. However, in the run of the mill criminal causes the informal examination of jurors permitted by the statute in civil actions should be sufficient, and since it represents substantially the practice which is in daily use, it ought to be incorporated in our rules." 75 *N. J. L. J.* at 107.

On November 10, 1949 the Supreme Court adopted the suggestion and revised *Rule* 2:7-2(*b*) (now *Rule* 3:7-2(*b*)) to provide that in criminal cases not involving the death penalty,

"\* \* \* after a juror's name is drawn from the box and without putting him under oath, questions may be asked of him and shall be permitted, within the discretion of the court, for the purpose of determining whether or not to interpose a peremptory challenge and of disclosing whether or not there is cause for challenge."

And in the 1951 revision of the criminal procedure act which became effective January 1, 1952, the Legislature accommodated the statute to *Rule* 2:7-2(*b*). *N. J. S.* 2*A*:78-4. It added that the questioning "shall be conducted under the supervision and control of the trial judge and in open court."

Historically throughout the country the feeling that in administering the new procedure, *i. e., voir dire* examination of prospective jurors without preliminary interposition of formal challenge, the courts could and would assert a close control over such questioning in order to keep it within sensible and reasonable limits. *Moore, supra,* at *p.* 453. Appellate courts and the Legislature of this State kept a tight formal rein (as distinguished from the more tolerant

practice of the trial bench) on *voir dire* examination of jurors in criminal cases (except capital offenses). Undoubtedly at the outset of the relaxation of the ancient common law rule our trial judges *intended* to keep the questioning within reasonable bounds. Unfortunately, here as elsewhere, performance did not match intention and the interrogation got out of hand. Counsel began to subvert the function which was to assist in the impaneling of an impartial jury by using it to educate the jury panel on the facts of the particular case, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, to induce the jurors by use of the hypothetical questions or otherwise to commit themselves to vote in a particular way, or to instruct them in matters of law.

The scope of the interrogation was regarded universally as being within the discretion of the trial court. In practice few judges showed any inclination to interfere with its length or nature. As a result by 1928 the length and prolixity of the examination moved Judge Learned Hand to say that it "had become a scandal, and required some effective control." *Falter v. United States,* 23 F. 2d 420, 426 (2d Cir. 1928). Recently one appellate judge observed that "unrestricted *voir dire* by counsel often trespasses on eternity." *Rousseau v. West Coast House Movers,* 256 Cal. App. 2d 878, 64 Cal. Rptr. 655, 660 (1967).

Even prior to Judge Hand's comment the Judicial Conference of Senior Circuit Judges recommended that:

"Examination of the prospective jurors shall be by the judge alone. If counsel on either side desires that additional matter be inquired into, he shall state the matter to the judge, and the judge, if the matter is proper, shall conduct the examination." 10 *A. B. A. J.* 875 (1924).

The recommendation was adopted as a rule of court by many federal courts, and in 1938 Congress enacted *Rule* 47(a) of the Rules of Civil Procedure, which rule is paralleled by *Rule* 24(a) of the Rules of Criminal Procedure.

These rules authorize the trial court to permit the parties or their attorneys to conduct the examination of prospective jurors or to conduct the examination itself. They provide also that if the court conducts the examination, it should permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper, or if it wishes, it can conduct any additional inquiry suggested by the parties or their attorneys. By 1960 the judges in 51 federal districts were conducting all *voir dire* questioning of jurors. *Kerr,* "Empaneling of a Jury", 28 *F. R. D.* 37, 185, 188 (1962). No later study has been called to our attention. In that year the Judicial Conference Committee on the Operation of the Jury System recommended to the Judicial Conference of the United States that:

"The voir dire examination of trial jurors by the judge, together with supplemental examination, at the instance of the parties and counsel, *by the judge,* * * * results in great savings of time, and the character of the examination is thereby much improved. The Committee recommends that this practice be followed in all districts where the jury is selected in the presence of the judge." (Emphasis ours). "The Jury System in the Federal Courts", 26 *F. R. D.* 409, 467, 468 (1961).

Since adoption of the federal rules, a substantial number of states have endeavored to exercise more control over *voir dire* questioning of jurors. See Note, "Voir Dire Examination — Court or Counsel," *supra,* 11 *St. Louis U. L. J.,* at *pp.* 237–249. To discuss the various changes would unduly lengthen this opinion. Reference to the practice now followed in a few of the larger states having heavy trial calendars seems to indicate the trend. California has noted the waste of valuable court time in the preliminary questioning of jurors. The courts have pointed out that the *voir dire* examination is not the time for the premature presentation of evidence, nor for the even more frequent attempt at pre-instruction; neither presentation of evidence nor instruction is the function of counsel. It has been said also that

"The larger interest of the trial bar as a whole, and of equally earnest litigants who await a forum for their own trials, is frustrated by such dissipation of court time. We cannot expect the Legislature to provide, or the people to pay for * * * overlong voir dire exercises." *Sweet v. Stutch,* 240 *Cal. App.* 2d 891, 50 *Cal. Rptr.* 9, 11 (1966).

Another appellate court, after referring to the abuses which had arisen from the failure of the trial judges to exercise proper control, approved the trial court's action in conducting the entire questioning itself after advising counsel to submit questions to it before and during the examination. *Rousseau v. West Coast House Movers, supra,* 64 *Cal Rptr.,* at 657–660.

In Illinois *voir dire* examination of jurors has become the primary responsibility of the trial judge. He must initiate the questioning and put to the jurors any questions he thinks necessary touching their qualifications to sit in the case. The parties or their attorneys are allowed a reasonable opportunity to supplement the examination *"but shall not directly or indirectly examine jurors concerning matters of law or instructions."* (Emphasis ours). *Ill. Ann. Stat. Ch.* 110A § 234, *p.* 258 (*Sup. Ct. Rule* 234) (1968).[2] The

---

[2] This rule followed the Report to the Judicial Conference of the Committee on Limitation of Voir Dire Examination. Excerpts from the report indicate the supporting reasons.

' "Judges, throughout the State, faced with an ever expanding volume of litigation and in some sections scandalous delays, are increasingly concerned with the disposition on the part of trial counsel to prolong inordinately the voir dire examination by: 1. indulging in tedious and repetitious examinations; 2. propounding long rhetorical questions designed to ingratiate the lawyer with the jury rather than to elicit information and; 3. tiresome statements outlining the law, the inquisitor's philosophy and ideas on various subjects, his notion concerning the thought processes to be followed by the jurors all thinly disguised as questions by the expedient of punctuating the discussion from time to time with 'isn't that right?', or similar phrases more often than not without pause to allow the sometimes bewildered juror to answer."

＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

"The examination of jurors concerning questions of law supposed to be encountered in the case is without question one of the most per-

Supreme Court of Illinois rejected a contention that the Rule was violative of due process and of the right of jury trial, saying among other things:

"In adopting [then] Rule 24–1, this court sought to expedite jury trials in a manner consistent with the thorough protection of the rights and interests of the litigants. The evils attendant upon a lengthy and unrestricted *voir dire* examination of jurors have long been recognized. In Pennsylvania Co. v. Rudel, 100 Ill. 603, 608, decided in 1881, we stated: 'The unnecessary protraction of jury trials has come to be a great evil, and one thing which contributes thereto is the needlessly long drawn out examination of jurors.' We further commented on this condition in Mithen v. Jeffery, 259 Ill. 372, 376, 102 N. E. 778, in 1913, and stated: 'There is a further objection that the interminable examination of jurors, so often made as to different individuals and every conceivable relation to them, should not be indulged in.' " *People v. Lobb*, 17 *Ill.* 2d 287, 300, 161 *N. E.* 2d 325, 332 (1959).

In Michigan originally the parties had the right to examine jurors directly. *Stephens v. People*, 38 *Mich*. 739 (1878). Practice in that state now permits the trial judge

nicious practices indulged in by many attorneys. The usual procedure is to inquire as to whether or not jurors will follow certain instructions if given. That the supposed instructions as orally expounded by the advocate are slanted, argumentative and often so clearly erroneous as to cause certain reversal if given by the court, surprisingly appears to be a matter of little concern. Indeed many lawyers and judges consider it necessary that the lawyers give the jurors a certain amount of insight into the law before the commencement of the trial. This constitutes oral instruction of the jury by the attorneys, in advance, and as to questions of law which may or may not become pertinent. In Illinois, judges are not allowed to give oral instructions unless by agreement of the parties. Instructions whether oral or written, by statute, must be given at the end of the case. (S. H. A. ch. 110, § 67).

"When an attorney is allowed to give his version of the law to the jury, the other lawyer is certain to retaliate by giving his version of it. The inevitable result is that the court is required in settling the dispute to instruct the jury orally and in advance on questions of law that may not eventually be relevant to the inquiry. If it is desirable that jurors be given cautionary instructions before evidence is taken it should be done by the court in writing. This, however, is a matter for the legislature to correct. In any event propounding questions of law to the jury is of no aid in arriving at the legitimate

to conduct the entire *voir dire* himself. *Michigan Court Rule* 511.3 (1963) ; *People v. Cole,* 8 *Mich. App.* 250, 154 *N. W. 2d* 579 (1967) ; *People v. Lahey,* 256 *Mich.* 250, 239 *N. W.* 254, 256 (1931) ; *People v. Hayek,* 243 *Mich.* 546, 220 *N. W.* 790 (1928).

Reference to these jurisdictions seems sufficient to suggest that generally courts favor eliminating the waste of time and money, the undue burden imposed on court personnel, on court room facilities, and on already congested trial calendars — to say nothing of subversion of the true purpose of juror examination. The remedial movement is toward adoption of methods designed to restore the fundamental basis for preliminary questioning, *i. e.,* an expedient selection of a fair and impartial jury, one that will decide the case fairly under the evidence presented and the instructions of the court. Obviously a most important method is to limit more stringently the conduct and scope of the *voir dire.* Essentially this means eliminating the efforts to indoctrinate, to persuade, to instruct by favorable explanation of legal principles that may or may not be involved, to lecture on the law

purpose of the voir dire, namely, an intelligent exercise of the right of challenge. Such questions are improper and should not be allowed." '

A 1958 letter of the drafting committee of the Judicial Conference to the Illinois Supreme Court stated in part :

' "You will notice that the proposed rule is mandatory and requires the judge in every criminal and civil jury trial to initiate the voir dire examination of jurors. A rule, which merely outlines the procedure which may or may not be followed at the discretion of the trial judge, will accomplish little.

\* \* \* \* \* \* \* \*

"The prohibition as to matters of law is a most important element of the proposed rule. It is here that so many lawyers infringe upon the prerogatives of the court and under the guise of eliciting information attempt to impart to the jurors a conception of the law highly favorable to their side of the case. Such tactics, unfortunately almost universally followed in today's Illinois jury trials, invade the province of the court, are time consuming, tend to confuse the jurors and do nothing to further the purpose of the voir dire procedure." '

*Ill. Ann. Stat. Ch.* 110A, § 234 (Notes to Supreme Court Rule 234, *pp.* 258-259) (1968).

and the facts and the relation of one to the other, the lecture ending in a question for form's sake. It means also a prohibition of the hypothetical question intended and so framed as to commit or to pledge jurors to a point of view or a result before they have heard any evidence, argument of counsel or instructions of the court. M ost of the impartial students of the problem favor streamlining the jury selection process and in particular the present lengthy and cumbersome *voir dire*. See, Note, 11 *St. Louis U. L. J., supra; Ill. Ann. Stat. Ch.* 110A, § 234 (Notes to Sup. Ct. Rule 234, *pp.* 258–266) (1968) ; 1963 *U. Ill. L. Forum* 644, 645–646; Vance, "Examination of Jurors," 8 *Vill. L. Rev.* 26 (1962) ; Note, "Investigation of Jurors by Counsel: Its Impact on the Decisional Process," 56 *Geo. L. J.* 839 (1968) ; Broeder, "Voir Dire Examination: An Empirical Study," 38 *So. Cal. L. Rev.* 503, 505 (1965) ; Note, "The Streamlined Jury System," 36 *So. Cal. L. Rev.* 89, 91, 97 (1962) ; *Millar, Civil Procedure of the Trial Court in Historical Perspective, supra,* at *p.* 297.

The situation in New Jersey is substantially the same as in other states. In many instances it has taken as long or longer to empanel a jury as to try the case. The impression is inescapable that the aim of counsel is no longer *exclusion* of unfit or partial or biased jurors. It has become the *selection* of a jury as favorable to the party's point of view as indoctrination through the medium of questions on assumed facts and rules of law can accomplish.

In order to remedy the situation this Court has adopted *Rule* 1:8–3(a), effective Sepember 8, 1969, applicable to both civil and criminal cases. It provides:

"For the purpose of determining whether a challenge should be interposed, the court *shall* interrogate the prospective jurors in the box after the required number are drawn without placing them under oath. The parties or their attorneys *may* supplement the court's interrogation in its discretion. At trials of crimes punishable by death where the death penalty has not been waived pursuant to R. 3:1–3, however, the examination shall be made of each juror individually, as his name is drawn, and under oath." (Emphasis ours).

Administration of this rule will require trial judges to exercise greater control over the *voir dire* questioning than has been exercised in our State in modern times. The burden necessarily assumed by them will be compensated for in substantial measure by a shortening of the time for empaneling a jury (*Mathes and Devitt, Federal Jury Practice and Instructions,* 14 (1965)) and by avoidance of the tedium associated with prolix and repetitious questioning, much of which intrudes into the aspect of the trial which should be dealt with by the judge alone at the proper point in the proceedings. From the public standpoint, preliminary questioning by the neutral judge is more likely to produce a truly impartial jury. In addition it will avoid the unreasonable expense of a protracted jury examination; it will serve the interest of the jurors by conserving their time and energy and by eliminating unwarranted intrusion into their personal affairs; it will tend to encourage citizens to serve as jurors; it will obviate the expense of wasted court time and serve the interest of other litigants in the availability of court facilities, as well as the interest of the judicial system in the effective and productive dispatch of its business. Finally, and certainly of substantial importance, the new practice will serve the interest of counsel in conducting litigation and earning fees with a minimum of unproductive time.

In order to accomplish the purpose of *Rule* 1:8–3(a), the trial court in administering the discretionary portion thereof must exercise considerable restraint over supplementary questioning by counsel. The basic intent is to have the *voir dire* conducted exclusively by or through the trial judges to the extent reasonably possible. Examination by the court will be facilitated if questions on subjects the parties or counsel desire covered are submitted in advance of or at the opening of the trial. *Cf., Filipiak v. Plombon,* 15 *Wis. 2d* 484, 113 *N. W. 2d* 365, 371 (1962). Of course supplementary questioning by counsel personally is not foreclosed entirely, but control over its scope and content is left to the experienced judgment and discretion of the trial judge to

be exercised with the history and purpose of the rule in mind. In this connection also it may be noted that the rule calls for a much more guarded exercise of discretion than that previously announced in *State v. Sullivan*, 43 *N. J.* 209, 239–240 (1964).

Undoubtedly within a short time practical procedures for use of the rule will emerge, also precedents regulating supplementary questioning by counsel. To assist in the development of the latter an appendix is added hereto noting types of interrogation in criminal cases which have been considered improper in various jurisdictions.

## IV

For the reasons stated above the defendant's conviction is affirmed.

## APPENDIX

The following is a catalogue of criminal cases declaring *voir dire* questions improper in other jurisdictions. The list is illustrative and for guidance purposes.

It has been held improper to ask whether if the prospective juror were on trial, he would want a juror of his mental attitude to sit in judgment. *Murphy v. United States*, 7 *F. 2d* 85 (*1st Cir.* 1925); *Roberts v. State*, 94 *Fla.* 149, 113 *So.* 726 (1927); *State v. Wakefield*, 111 *Or.* 615, 228 *P.* 115 (1924); *Carpenter v. State*, 129 *Tex. Cr. R.* 397, 87 *S. W. 2d* 731 (1935); *Bonfils v. Hayes*, 70 *Colo.* 336, 201 *P.* 677 (1921); *People v. Love*, 53 *Cal. 2d* 843, 3 *Cal. Rptr.* 665, 350 *P. 2d* 705 (1960) (not prejudicial); but see *Zancannelli v. People*, 63 *Colo.* 252, 165 *P.* 612 (1917). Also held improper were the following questions: (1) How would you vote if the evidence were evenly balanced? *People v. Cole*, 8 *Mich. App.* 250, 154 *N. W. 2d* 579 (1967); *Kurczak v. United States*, 14 *F. 2d* 109 (*6th Cir.* 1926); *People v. Caldwell*, 107 *Mich.* 374, 65 *N. W.* 213 (1895); (2) Could defendants rely upon you to vote for no verdict except what

you thought was right, irrespective of what the other jurors did, except as they might influence you by legitimate argument? *Fredericks v. United States,* 292 *F.* 856 (*9th Cir.* 1923); (3) (in a narcotics case where the defense was dispensation for treatment purposes) whether the juror had any preconceived ideas as to the proper method of treating drug addicts? *Hoyt v. United States,* 273 *F.* 792 (*2d Cir.* 1921); (4) Suppose 11 of the jurors thought the defendant guilty and were satisfied of it beyond a reasonable doubt and you had doubt of the guilt, what would you do then? *State v. Tally,* 22 *S. W. 2d* 787, 788 (*Sup. Ct. Mo.* 1929); (5) whether the juror would make his own decision as to whether defendant was innocent or guilty or "let somebody else on the jury make it for you"? *State v. Wall,* 339 *Mo.* 111, 116, 96 *S. W. 2d* 36, 39 (1936); *State v. Irby,* 131 *La.* 795, 60 *So.* 253 (1912). And in *McGee v. State,* 219 *Md.* 53, 146 *A. 2d* 194 (1959); *State v. Katz Drug Co.,* 352 *S. W. 2d* 678 (*Mo. Sup. Ct.* 1961) (also excluding this proposition — if the prosecution showed certain facts and if the court charged that such facts violate the law, whether the juror would convict); *State v. Huffman,* 86 *Ohio St.* 229, 99 *N. E.* 295 (1912); *State v. Hawkins,* 362 *Mo.* 152, 240 *S. W. 2d* 688 (1951); *State v. Tally, supra,* it was held improper to ask a juror to speculate upon what he might do in certain contingencies or how his verdict might be influenced by certain contingencies. In *State v. McKeever,* 339 *Mo.* 1066, 101 *S. W. 2d* 22 (1936) it was improper to ask if the juror would accept the testimony of an accomplice the same as that of a disinterested and uncontradicted witness if it developed on the trial that he had repudiated an earlier confession, and was now implicating the defendant.

Likewise it has been held improper to permit counsel to state the substance of each instruction which he believed the judge would give and ask each juror whether he would follow such instructions. *People v. Modell,* 143 *Cal. App. 2d* 724, 300 *P. 2d* 204 (1956); to allow counsel to explain the law to the prospective jurors or to tell them what the

court's instruction will be upon a certain point. *State v. Bolle*, 201 *S. W. 2d* 158 (*Sup. Ct. Mo.* 1947); *People v. Wiggins*, 231 *Ill. App.* 467 (1923);[1a] to inquire if they think the law on habitual offenders is good or bad *State v. Mosier*, 102 *S. W. 2d* 620 (*Sup. Ct. Mo.* 1937); to ask what effect testimony concerning defendant's reputation would have on them *People v. Cole, supra;* to inquire whether the juror would be prejudiced if it developed during the trial that defendant had been court martialled "some 20 times." *Klinedinst v. State*, 159 *Tex. Cr. R.* 510, 265 *S. W. 2d* 593 (1953); or what his "verdict would be if he had any reason to disbelieve the witnesses for the state and no reason to disbelieve the witnesses for the defense." *State v. Plummer*, 153 *La.* 730, 96 *So.* 548, 549 (1923); and *State v. Bickham*, 236 *La.* 244, 107 *So. 2d* 458 (1958) (suggesting the impropriety of asking whether the juror would sustain a plea of self-defense under an assumed state of facts which defendant intended to establish at the trial (because it was designed to ascertain the juror's reaction to evidence in advance of the possible presentation of the same evidence at the trial)).

The question: "Would any of you place a greater amount of weight upon the testimony of law enforcement officers over that of the defendants" was rejected but with the plain indication of allowance thereof if "simply because of their official character" were added; *Chavez v. United States*, 258 *F. 2d* 816, 819 (10*th Cir.*), *certiorari* denied 359 *U. S.* 916, 79 *S. Ct.* 592, 3 *L. Ed. 2d* 577 (1958); such qualifying language approved in *Sellers v. United States*, 106 *U. S.*

---

[1a]. The Illinois Supreme Court speaking of this subject said that such statements are usually slanted, argumentative and often clearly erroneous. Under the guise of eliciting information they attempt to impart to the jurors a conception of the law highly favorable to one side of the case. They invade the province of the court, are time consuming, tend to confuse the jurors and do nothing to further the purpose of the *voir dire* procedure.

*App. D. C.* 209, 271 *F.* 2d 475 (*D. C. Cir.* 1959); also, "Would you accept as readily convict testimony as you would testimony of free" persons? *State v. Smith,* 234 *La.* 19, 99 *So.* 2d 8, 9 (1958); and "Now, if you are accepted as a juror and you enter the jury room to deliberate and find a verdict, and you had once voted 'not guilty' would you then change your vote to one of 'guilty,' and if so, why"? *People v. Hinshaw,* 40 *Cal. App.* 672, 182 *P.* 59 (1919).

Also excluded were questions relating to the presumption of innocence and character of proof necessary in a criminal case, *People v. Conklin,* 175 *N. Y.* 333, 67 *N. E.* 624, 626 (*Ct. App.* 1903) and reasonable doubt. *Fugitt v. State,* 85 *Miss.* 86, 37 *So.* 557, 558 (1904). In this connection the Pennsylvania Supreme Court has said: "[The prospective juror] may be asked the broad question whether, if sworn as a trier, he would accept and act upon the law as stated to him by the court; and this is as far as the examination on the *voir dire* may properly proceed along that line." *Commonwealth v. Calhoun,* 238 *Pa.* 474, 86 *A.* 472, 475 (1913).

The above list is intended to present cases dealing with matters relating generally to the nature of jury service. The few New Jersey cases in the reports did not seem sufficiently significant to include them. It will be observed also that no attempt has been made to supply out of state examples of proper or improper questioning of prospective jurors regarding racial, religious, economic, social or political prejudices in a proper setting. For an annotation on that subject, see, 72 *A. L. R.* 2d 905 (1960).

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN — 6.

*For reversal* — None.