**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4146-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LEO T. LITTLE, JR., a/k/a
JAMES SMITH, and JOHN
SMITH,

    Defendant-Appellant.

_____

Submitted December 11, 2019 – Decided February 5, 2020

Before Judges Koblitz, Whipple, and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-08-2314.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Adam David Klein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Leo T. Little Jr., appeals from a March 9, 2018 judgment of conviction entered after a jury found him guilty of aggravated assault, N.J.S.A. 2C:12-1(b)(4); possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1). Because we find error in the jury voir dire, we reverse and remand for a new trial.

On May 26, 2016, A.R. was driving her cab in Camden. B.R. accompanied her for safety purposes. While parked, A.R.'s car was side-swiped by a green Buick Century.

A.R. and B.R. exited the car to assess the damage, and defendant stepped out of the passenger side of the Buick. B.R. told defendant he would have to pay for the damage. According to B.R., defendant was irate, and defendant began "talking to [him] on the side of [his] face" as B.R. was taking pictures of the damage. B.R. told defendant he was going to call the police to obtain a police report. As B.R. began to dial his phone, defendant yelled, "Oh, you're going to call the cops? Oh, you['re] calling the cops? You're calling the cops?" After the police were called, defendant left, stating he was going to go get money for B.R.

When he returned, defendant had what B.R. identified to be a black Beretta handgun in his waistband. Defendant cocked the gun and waved it at A.R. and B.R., saying, "move the car," "move that shit, move that shit." B.R. knew defendant was wielding a Beretta because he grew up around weapons, his parents had firearms licenses, and his friend owned a smaller Beretta firearm. A.R. also recognized the object as a black gun.

When the police arrived, A.R. shouted out, "He has a gun!" Defendant ran down the street, and a responding officer saw him holding his waistband. A police officer chased defendant to a row home where a crowd of twelve-to-fifteen people were gathered. Defendant ran up the steps and dropped an object next to a column on the porch. A female picked up the object and left the area. Defendant eluded capture, and police never recovered the gun.

Defendant left the Buick behind when he fled. Inside the glove box, police found several traffic summonses issued to defendant. On June 21, 2016, police pulled over a speeding green Buick Century in Camden. Defendant was identified as the driver and was arrested and subsequently convicted by a jury.

During jury voir dire, defense counsel objected to the use of the following question:

> The law does not require that the State recover a gun even though the defendant has been charged with

weapons-related offenses. If the State does not produce the physical firearm allegedly used in this case, would this affect your ability as a juror?

Defense counsel argued the question injected advocacy into jury selection, because whether the State could prove defendant possessed a gun went to the merits of its case. The trial judge overruled the objection, noting the question could reveal potential jurors who would be unwilling to convict a defendant based on circumstantial and testimonial evidence.

The question was asked but confused some potential jurors. For example, one potential juror responded, "You mean there's no proof -- that there was a weapon or something? Or -- what do you mean? . . . I don't know. That's kind of weird." Another potential juror asked the judge to repeat the question and replied it would affect his ability to impartially consider the evidence because, "You try to prove . . . this person is guilty and then one of the [pieces of] evidence could be the gun, and you cannot provide the . . . evidence . . . . I think . . . I wouldn't say this person is guilty." At one point, the trial judge attempted to clarify the question, explaining,

the State alleges . . . that they have witnesses who said that this is what happened, and that they saw a gun, but they don't have . . . an actual gun to produce, and the law doesn't require that they have an actual gun to prove this as a prima facie case in terms of making out their basic case. So the question is if that's how this case is

4

presented would that affect your ability to be fair and impartial as a juror?

Defense counsel renewed his objection, and the trial judge revised the question as follows:

> The law does not require that the State produce a gun at trial even though the defendant has been charged with weapons offenses. If the State did not recover and does not produce the gun allegedly used in this case, but presents evidence in the form of testimony, how will this affect your ability as a juror?

Still, the revised question caused some potential jurors to hesitate. One juror responded, "I would think if you're telling me that's evidence enough and you're telling me just to judge the facts, that's what I'll do. I can be objective." Another juror answered, "Well, the whole thing is about the gun. . . . So if they don't have a gun, they can't prove that he did it." One juror was confused, stating, "I'm a little uncertain of that. I'm not sure how to answer that one."

The State struck some jurors who affirmatively answered the above questions, or who expressed confusion or hesitated in response to the question. However, despite objecting, defense counsel did not request any particular relief.

5

A second trial before the same jury was held on the certain persons charge. Defendant stipulated to his prior conviction, and the jury returned a guilty verdict.

The judge sentenced defendant to a fifteen-year aggregate sentence with a seven-and-one-half year parole ineligibility period. This appeal followed.

Defendant raises the following issues on appeal:

POINT I

THE IMPERMISSIBLE INDOCTRINATION OF THE JURY DURING VOIR DIRE DEPRIVED [DEFENDANT] OF HIS RIGHT TO FAIR TRIAL[] WITH AN IMPARTIAL JURY.

POINT II

THE IMPROPER JURY CHARGE ON CERTAIN PERSONS DEPRIVED [DEFENDANT] OF A FAIR TRIAL BECAUSE THE COURT TOLD THE JURY THAT [DEFENDANT] HAD BEEN CONVICTED OF POSSESSION OF A CONTROLLED DANGEROUS SUBSTANCE WITHIN 1000 FEET OF A SCHOOL EVEN THOUGH [DEFENDANT] STIPULATED TO THE PREDICATE OFFENSE, AND AS A RESULT HIS CERTAIN PERSONS CONVICTION MUST BE REVERSED.

POINT III

THE PROSECUTOR'S PATTERN OF MISCONDUCT AND OVERREACHING DEPRIVED [DEFENDANT] OF HIS RIGHT TO A FAIR TRIAL.

A. The Introduction into Evidence of a Real Gun as a Replica Deprived [Defendant] of his Right to a Fair Trial.

B. The State's Unnecessary and Prejudicial Introduction of [N.J.R.E.] 404(b) Evidence Violated [Defendant's] Right to a Fair Trial. (Not raised below)

C. The Prosecutor's Improper, Irrelevant Injection of Fear of Retaliation into This Case Necessarily Had the Capacity to Lead to an Unjust Result. (Not raised below)

D. Improprieties in the Prosecutor's Closing Argument Deprived [Defendant] of His Right to a Fair Trial and Led to an Unjust Result. (Partially Raised Below)

E. The Prosecutor's Arguments During the Certain Persons Trial that the Jury Already Found that [Defendant] Possessed a Firearm Led Directly to an Unjust Result. (Not raised below)

F. Conclusion.

POINT IV

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A CONSECUTIVE SENTENCE ON CERTAIN PERSONS.

POINT V

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MANIFESTLY EXCESSIVE SENTENCE.

7

Defendant argues the missing gun voir dire question impermissibly "indoctrinated" potential jurors. In effect, potential jurors were asked to give their views on their understanding of the criminal law before hearing the evidence. According to defendant, the question primed the jury to find defendant guilty despite the missing gun. Defendant relies on State v. Manley, 54 N.J. 259 (1969) and State v. Kelly, 118 N.J. Super. 38 (App. Div. 1972), to argue that it was error for the trial judge to question potential jurors on legal principles before the presentation of evidence. As a result, defendant contends the prosecutor's use of strikes aided in creating a potentially biased jury. We agree.

"Voir dire procedures and standards are traditionally within the broad discretionary powers vested in the trial court and 'its exercise of discretion will ordinarily not be disturbed on appeal.'" State v. Papasavvas, 163 N.J. 565, 595 (2000) (quoting State v. Jackson, 43 N.J. 148, 160 (1964)). "The purpose of voir dire is to ensure an impartial jury' by detecting jurors who cannot fairly decide a matter because of partiality or bias." State v. O'Brien, 377 N.J. Super. 389, 412 (App. Div. 2004) (quoting State v. Martini, 131 N.J. 176, 210 (1993)), aff'd in part, rev'd in part on other grounds, 183 N.J. 376 (2005).

> "[T]here is no particular litany required for the jury voir dire," and the court is not obligated "to ask any

particular question or indulge the defendant's requests absolutely." Appellate review is generally limited to determining whether "the overall scope and quality of the voir dire was sufficiently thorough and probing to assure the selection of an impartial jury."

[Id. at 412–13 (alteration in original) (first quoting State v. Lumumba, 253 N.J. Super. 375, 393–94 (App. Div. 1992), then quoting State v. Biegenwald, 106 N.J. 13, 29 (1987)).]

"While . . . the trial judge possesses 'broad discretionary powers in conducting voir dire . . .[,]' our Supreme Court has also indicated that it will not 'hesitate[] to correct mistakes that undermine the very foundation of a fair trial—the selection of an impartial jury.'" State v. Tinnes, 379 N.J. Super. 179, 184 (App. Div. 2005) (quoting State v. Fortin, 178 N.J. 540, 575 (2004)).

"Whether or not to inquire of prospective jurors about attitudes concerning substantive defenses or other rules of law which may become implicated in a trial or in the charge is within the discretion of the trial court." State v. Murray, 240 N.J. Super. 378, 393 (App. Div. 1990). "Questions on subjects covered in the court's charge should be rarely allowed." Ibid. But, "[g]enerally, a trial court's decisions regarding voir dire are not to be disturbed on appeal, except to correct an error that undermines the selection of an impartial jury." State v. Winder, 200 N.J. 231, 252 (2009).

In Manley, our Supreme Court shifted the responsibility for conducting jury voir dire from lawyers to judges. 54 N.J. at 280. The intent was to promote efficiency in securing "a fair and impartial jury" and to forego lawyers' "efforts to indoctrinate, to persuade, to instruct by favorable explanation of legal principles . . . and the facts and the relation of one to the other. . . ." Id. at 280–81. "It means also a prohibition of the hypothetical question intended and so framed as to commit or to pledge jurors to a point of view or a result before they have heard any evidence, argument of counsel or instructions of the court." Id. at 281.

The defendant in Manley was charged with murder and sought to question the jury on their view of his prior assault convictions. Id. at 263–64. However, when jury voir dire was conducted, it was not yet known whether the defendant would testify. Id. at 264. Thus, the trial judge declined to ask potential jurors about their views on a person's criminal past to avoid influencing the jury. Ibid. The defendant did ultimately testify, and on appeal claimed he should have been allowed to question potential jurors about his prior crimes. Id. at 265. Our Supreme Court held the trial court did not abuse its discretion, because the decision prevented the defendant from experiencing unnecessary prejudice in the event he did not testify. Id. at 271. The Manley Court then crafted a court

rule that steered jury voir dire away from an advocacy-based approach by reducing questions intended to identify jurors who would be sympathetic to a particular argument. Id. at 280–81.

In Kelly, the defendant wanted to ask potential jurors about their views on the insanity defense. 118 N.J. Super. at 46. The trial court declined to do so, and this court affirmed the decision, because asking the question runs the risk of committing jurors to a particular viewpoint without hearing expert testimony or evidence. Id. at 49. In order to conduct an efficient jury selection, questions about jurors' views on the law or substantive defenses should be avoided, particularly if the legal rule will be covered in the court's charge. Id. at 51.

Manley and Kelly prohibit advocacy-based jury voir dire questions intended to commit potential jurors to a point or view or outcome before they have heard the evidence. However, this does not exclude the use of context-specific questions in order to ferret out bias among the jury pool. In State v. Moore, our Supreme Court explained

> voir dire acts as a discovery tool. It is like a conversation in which the parties are trying to reveal the source of any such attitudes without manipulation or delay of the trial. However, in order for that discovery procedure to be effective, potential jurors need to have some basic comprehension about what their legal duties as jurors will be.

[122 N.J. 420, 446 (1991).]

The defendant in <u>Moore</u> sought to ask potential jurors what their reaction would be to hearing the defendant was accused of murdering a pregnant woman and a young child. <u>Ibid.</u> The trial court refused to ask the question because it would force the potential jurors to speculate on how their verdict might be impacted by the disturbing details of the case. <u>Ibid.</u> However, our Supreme Court reversed the trial court because this type of question, while context-based, was helpful to determine jurors whose judgment may be clouded by the facts of the case. <u>Id.</u> at 447. To limit voir dire to generic questions about potential jurors' ability to follow the law, as a general matter, was an "overread[ing]" of <u>Manley</u>, "which was not to eliminate judicial inquiry into juror biases in the context of the case but rather 'to limit more stringently the conduct and scope of the voir dire.'" <u>Ibid.</u> (quoting <u>Manley</u>, 54 N.J. at 280). Indeed, it was appropriate to ask potential jurors about whether the facts of a case would affect their impartiality because "that is the purpose of voir dire: to see if there are biases or predispositions in the 'particular case' that is before the court." <u>Id.</u> at 448; <u>see also</u> <u>State v. Biegenwald</u>, 126 N.J. at 33 ("Regrettably, we perceive from the records in many of the cases coming before us that the trial courts have read <u>Manley</u> . . . to limit voir dire to the bare minimum necessary to qualify a juror.").

12

Here, defendant contends the voir dire question primed the jury to ignore the fact that the State did not recover the gun but still find defendant guilty. Although the trial judge was within his discretion to fashion context-specific questions to determine whether any in the particular jury pool might ignore his charge, the question caused several jurors to reveal they would only convict defendant of possessing a firearm with tangible proof of the gun. Those jurors were then dismissed by the State, which potentially resulted in a jury biased toward the State's argument.

Because we reverse defendant's conviction and remand for a new trial, we need not address defendant's remaining arguments.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4146-17T4