SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Leo T. Little, Jr.** (A-80-19) (084115)

**Argued December 1, 2020 -- Decided May 27, 2021**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, defendant Leo T. Little, Jr., challenges his conviction for aggravated assault and weapons offenses on the ground that voir dire questioning by the trial court of prospective jurors during jury selection deprived him of a fair trial.

According to trial testimony, defendant was the passenger in a car that sideswiped a taxi. When asked by the taxi driver and her passenger to pay for the damage, defendant left and returned with a handgun. The passenger described the weapon as a black Beretta and said that defendant "cocked the pistol," pointed it at him, and ordered him and the taxi driver to get back in the taxi and leave. According to the testimony of a police officer, defendant fled the scene as officers arrived, and ran up the steps of a home and dropped an object on the porch. The officer testified that an unidentified woman immediately appeared on the porch, retrieved the object, and left the area. Police officers did not locate the woman and did not recover a weapon.

Prior to trial, the State requested that the trial court inquire during jury selection about prospective jurors' reactions to the State's inability to produce the weapon that defendant allegedly used. Defense counsel objected to the State's request and argued that the proposed question constituted advocacy rather than proper voir dire.

The trial court overruled the objection. The court modified the State's proposed question so that it read as follows: "The law does not require that the State recover a gun, even though the defendant has been charged with weapons-related offenses. If the State does not produce the physical firearm allegedly used in this case will this affect your ability as a juror?" During the initial phase of jury selection, the trial court posed that question to several prospective jurors, with some minor variations in wording.

To make the meaning of the question more clear, the trial court later revised the question to read: "The law does not require that the State produce a gun at trial even though the defendant has been charged with weapons offenses. If the State did not recover and does not produce the gun allegedly used in this case, but presents evidence in the form of testimony, how will this affect your ability as a juror?"

1

Most jurors asked either version of the question indicated that the absence of a gun would not affect their ability to serve as jurors.  The State exercised peremptory challenges to excuse jurors who indicated that they would acquit defendant or would be less likely to convict him if no weapon were admitted into evidence.  The jury convicted defendant of all offenses.

The Appellate Division agreed with defendant that the questions asked of prospective jurors during jury selection predisposed the jury to ignore the fact that no gun was recovered and to find defendant guilty.  The Appellate Division therefore reversed defendant's conviction and remanded to the trial court for a new trial.

The Court granted the State's petition for certification.  243 N.J. 533 (2020).

**HELD:**  Trial courts may conduct voir dire questioning about a prospective juror's views on disputed issues to determine whether the juror will follow the court's instructions and deliberate with an open mind.  The trial court must ensure, however, that such questioning is not partisan and that it will not indoctrinate prospective jurors in favor of either side's position.  The court must present the issue to prospective jurors in balanced and impartial terms.  In this case, the questioning addressed only the component of the legal standard that assisted the State; it did not equitably present the evidentiary issue to the prospective jurors.  The responses of some of the prospective jurors indicate that the inquiry may have confused them.  The form of the questioning strongly favored the State's position and may have encouraged jurors to convict defendant.  Accordingly, defendant was not afforded his right to an impartial jury and is entitled to a new trial.

1.  In State v. Manley, the Court addressed what it considered to be inappropriate indoctrination of prospective jurors in the voir dire practice prevalent at the time.  54 N.J. 259, 280-81 (1969).  "[T]o remedy the situation," the Court adopted Rule 1:8-3(a), "which require[s] trial judges to exercise greater control over the voir dire questioning."  Id. at 281-82.  In post-Manley cases, the Court has underscored the propriety of inquiring about a juror's ability to follow the trial judge's instructions or to deliberate with an open mind, so long as the questions do not indoctrinate prospective jurors about the issues that the jury will decide.  The trial court is charged to reject or reformulate a question if it crosses the line from inquiry to advocacy.  (pp. 12-17)

2.  The Court has not previously considered the propriety of voir dire questions addressing the State's inability to produce a particular category of evidence at trial.  In appropriate cases, the State's inability to present a particular category of evidence can be a legitimate subject for the trial judge to address in voir dire.  If a juror is unwilling to consider the State's proofs absent a specific type of evidence, that juror may be incapable of following the court's instructions or fairly deciding the case.  (pp. 17-18)

3. The Court reviews the elements of the charged offenses and notes that the trial court here correctly recognized that the absence of the weapon allegedly possessed by defendant was a legitimate area of inquiry in voir dire. A jury, however, would be permitted to consider the State's inability to produce the handgun at issue as a factor when it decided whether the State had met its burden to prove beyond a reasonable doubt the elements of each offense. The trial court and the State acted in good faith, but the questions posed improperly suggested that jurors should not consider the absence of a handgun as a factor when they evaluated the State's proofs. Both versions of the question minimized the State's burden of proof with respect to the handgun. The Court concurs with the Appellate Division that by virtue of the voir dire questions, the jury selected in this case may have been biased in favor of the State. The Court also agrees that the voir dire jeopardized the fairness of defendant's trial. (pp. 18-20)

4. The Court provides a question that courts may pose in a case such as this, in which the issue is the absence of a weapon, to present the issue to prospective jurors in a neutral, non-partisan manner. The trial court on remand may use this question. (pp. 21)

**AFFIRMED AS MODIFIED, and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.**

State of New Jersey,

Plaintiff-Appellant,

v.

Leo T. Little, Jr., a/k/a
James Smith, and John Smith,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| December 1, 2020 | May 27, 2021 |

Adam D. Klein, Deputy Attorney General, argued the
cause for appellant (Gurbir S. Grewal, Attorney General,
attorney; Adam D. Klein, of counsel and on the briefs).

Monique D. Moyse, Designated Counsel, argued the
cause for respondent (Joseph E. Krakora, Public
Defender, attorney; Monique D. Moyse, on the briefs).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, defendant Leo T. Little, Jr., challenges his conviction for

aggravated assault and weapons offenses on the ground that voir dire

1

questioning by the trial court of prospective jurors during jury selection deprived him of a fair trial.

Because law enforcement did not recover the handgun that defendant allegedly used when he committed the charged offenses, the State anticipated that it would be unable to offer a weapon into evidence at trial. At the State's request, the trial court asked prospective jurors whether their ability to serve as jurors would be affected if the State did not produce the weapon that defendant allegedly used. The State exercised peremptory challenges to excuse jurors who indicated that they would acquit defendant or would be less likely to convict him if no weapon were admitted into evidence. The jury convicted defendant of all offenses.

Defendant argued on appeal that the trial court had deprived him of a fair trial by suggesting to prospective jurors that they should convict him despite the State's failure to produce a weapon. The Appellate Division reversed defendant's conviction, holding that the voir dire questioning had predisposed prospective jurors to find defendant guilty notwithstanding the absence of the weapon, and that the State's exercise of its peremptory challenges may have resulted in a biased jury. We granted the State's petition for certification.

2

We affirm as modified the Appellate Division's judgment. We reiterate that trial courts may conduct voir dire questioning about a prospective juror's views on disputed issues to determine whether the juror will follow the court's instructions and deliberate with an open mind. The trial court must ensure, however, that such questioning is not partisan and that it will not indoctrinate prospective jurors in favor of either side's position. The court must present the issue to prospective jurors in balanced and impartial terms.

In this case, the questioning addressed only the component of the legal standard that assisted the State; it did not equitably present the evidentiary issue to the prospective jurors. The responses of some of the prospective jurors indicate that the inquiry may have confused them. The form of the questioning strongly favored the State's position and may have encouraged jurors to convict defendant.

Accordingly, we concur with the Appellate Division that defendant was not afforded his right to an impartial jury and that he is entitled to a new trial.

I.

A.

We summarize the facts based on the trial testimony.

On May 26, 2016, a taxi parked on the side of a street in Camden was sideswiped by a passing Buick. The Buick was driven by a woman. A man

3

identified by witnesses as defendant rode in the Buick's front passenger seat. After striking the parked taxi, the driver of the Buick did not stop and departed the scene.

As the Buick left the scene, the taxi driver and her male passenger pursued it and quickly caught up with it. Defendant exited the Buick. The taxi driver and her companion exited the taxi and asked defendant to pay for the damage to the cab. According to the testimony of the passenger in the taxi, defendant was "mad" and "aggressive throughout the entire interaction," and when the passenger said he would call the police, defendant retorted, "oh, you're going to call the cops? Oh, you calling the cops? You're calling the cops?" The passenger summoned police.

According to the taxi driver and her companion, before the police arrived, defendant said he was leaving to get money and departed the scene. Both witnesses testified that when defendant returned, he had a handgun. The taxi driver testified that the weapon was a black handgun. Her companion described the weapon as a black Beretta and said that defendant "cocked the pistol," pointed it at him, and ordered him and the taxi driver to get back in the taxi and leave.

According to the testimony of a police officer, defendant fled the scene as officers arrived, and ran up the steps of a home and dropped an object on

4

the porch. The officer testified that an unidentified woman immediately appeared on the porch, retrieved the object that defendant had dropped there, and left the area. Police officers did not locate the woman and did not recover a weapon.

Defendant was arrested approximately a month after the incident.

## B.

### 1.

A grand jury indicted defendant for two counts of fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); one count of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); one count of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and one count of certain persons not to have weapons, N.J.S.A. 2C:39-7(b).

Prior to trial, the State requested that the trial court inquire during jury selection about prospective jurors' reactions to the State's inability to produce the weapon that defendant allegedly used. The State submitted a proposed question on that subject to the court. At the pretrial conference, defense counsel objected to the State's request and argued that the proposed question constituted advocacy rather than proper voir dire.

5

The trial court overruled defendant's objection. The court modified the State's proposed question so that it read as follows: "[t]he law does not require that the State recover a gun, even though the defendant has been charged with weapons-related offenses. If the State does not produce the physical firearm allegedly used in this case will this affect your ability as a juror?"

As jury selection began, the trial court described the charges against defendant to the prospective jurors and introduced them to the issues that would be contested at trial. The court instructed the prospective jurors that the State had the burden to prove each element of the charges beyond a reasonable doubt. It provided to the jurors written questionnaires which did not include the question about the State's inability to produce the gun. During the initial phase of jury selection, however, the trial court posed that question to several prospective jurors, with some minor variations in wording. Defense counsel reiterated his objection to the question.

Most of the prospective jurors to whom the question was posed indicated that the absence of a gun would not affect their ability to serve as jurors. Three prospective jurors, however, expressed reservations in response to the question posed.

The first of those prospective jurors commented, "[y]ou try to prove this -- this person is guilty and then one of the evidence could be the gun, and you cannot provide the -- the evidence, for example, I think-- you know, I wouldn't say this person is guilty." The juror added, "[i]f this gun is related to this case." Arguing that the prospective juror had signaled an unwillingness to follow the law, the State moved to strike him for cause. The trial court denied the motion. The State later exercised a peremptory challenge to excuse the prospective juror.

After asking for clarification, a second prospective juror responded to the trial court's question about the gun by inquiring, "[w]ell, the thing that you mentioned ahead of time, you know, you said that it was a nine millimeter weapon and stuff like that, how would anybody really know that if you don't have it physically there?" After the trial court explained that the State had indicated that a witness "identifies the gun as such," the prospective juror commented, "if you don't have something there, then -- you know what I mean? If there's not something there, if there's not some kind of weapon . . . [i]t could have been anything. It could have been a Saturday Night Special or something. I don't know." The State later used a peremptory challenge to strike the prospective juror.

A third prospective juror commented that the absence of a gun would "[k]ind of" affect her ability to serve as a juror, because she did not "want to falsely accuse somebody without proof that he had that gun." She added, however, that "if all the facts are presented to me and I'm hearing everything from the witnesses and the person, I can take into consideration what's going on better." The State later exercised a peremptory challenge to excuse the prospective juror.

At sidebar, the trial court suggested that it might be appropriate to revise the question about the absence of a gun before resuming voir dire, "to eliminate the possibility of the juror struggling with the meaning of the question, mainly." Adapting a revised version of the question suggested by the State, the trial court proposed the following instruction and question for prospective jurors:

> The law does not require that the State produce a gun at trial even though the defendant has been charged with weapons offenses. If the State did not recover and does not produce the gun allegedly used in this case, but presents evidence in the form of testimony, how will this affect your ability as a juror?

Arguing that the prior version of the question had confused prospective jurors, defense counsel objected to "having this question asked at all in its various forms." The trial court overruled the objection, and posed the revised question to prospective jurors during the remainder of jury selection.

8

In response to the revised question, the majority of the prospective jurors stated that the State's inability to produce a gun would not affect their ability to serve as jurors. Several commented that they would consider all the evidence in deciding the case.

One prospective juror responded to the revised question by stating, "[w]ell, the whole thing is about the gun," and "if they don't have a gun, they can't prove that he did it." Another prospective juror commented that it might be "a little harder" to convict defendant if the State did not produce a gun. The State exercised peremptory challenges to excuse both jurors.

In the first phase of defendant's bifurcated trial, the jury convicted him of both counts of fourth-degree aggravated assault, second-degree possession of a weapon for an unlawful purpose, and second-degree unlawful possession of a weapon. In the second phase, the jury convicted defendant of the certain persons not to have firearms offense.

The trial court sentenced defendant to an aggregate sentence of fifteen years in prison, with seven and a half years of parole ineligibility.

2.

Defendant appealed his conviction and sentence. He argued that the voir dire question regarding the missing gun deprived him of a fair trial. Defendant also contended that the trial court improperly instructed the jury regarding the

9

certain persons charge, claimed that the State committed prosecutorial misconduct, and challenged his sentence on two grounds.

The Appellate Division acknowledged that a trial court has discretion to fashion questions relating to the issues to be decided in order to discern whether a given juror might ignore its instructions. It noted, however, that "advocacy-based jury voir dire questions intended to commit potential jurors to a point [of] view or outcome before they have heard the evidence" are barred under State v. Manley, 54 N.J. 259, 280-81 (1969), and State v. Kelly, 118 N.J. Super. 38, 46-51 (App. Div. 1972). The Appellate Division agreed with defendant that the questions asked of prospective jurors during jury selection predisposed the jury to ignore the fact that no gun was recovered and to find defendant guilty.

The Appellate Division therefore reversed defendant's conviction and remanded to the trial court for a new trial. It did not reach defendant's remaining contentions.

We granted the State's petition for certification. 243 N.J. 533 (2020).

II.

A.

The State contends that the trial court properly exercised its discretion when it fashioned context-specific questions during voir dire. It argues that

10

neither version of the question posed to prospective jurors sought to bind jurors to convict defendant if the State met certain conditions, or encouraged them to base their determination only on the State's evidence. The State maintains that the questions accurately reflected the legal standard, which does not require the production of a weapon in order to convict a defendant of the offenses charged. It asserts that its decision to strike certain jurors does not mean that the remaining sworn jurors who heard and decided the case were biased.

### B.

Defendant argues that the trial court's questions about the weapon improperly indoctrinated the jury to ignore deficiencies in the State's evidence. He contends that the questions confused the prospective jurors and impermissibly probed their attitudes toward the rule of law at the core of the case. Defendant asserts that the trial court's errors deprived him of his constitutional right to a fair and impartial jury and that he is entitled to a new trial.

### III.

### A.

We review the trial court's conduct of voir dire at defendant's trial in accordance with a deferential standard. "[A] trial court's decisions regarding

11

voir dire are not to be disturbed on appeal, except to correct an error that undermines the selection of an impartial jury." State v. Winder, 200 N.J. 231, 252 (2009); see also State v. Fortin, 178 N.J. 540, 575 (2004) ("[A] trial court's exercise of its broad discretionary powers in conducting voir dire 'will ordinarily not be disturbed on appeal . . . .'" (quoting State v. Williams, 113 N.J. 393, 410 (1988))); State v. Papasavvas, 163 N.J. 565, 595 (2000) ("Voir dire procedures and standards are traditionally within the broad discretionary powers vested in the trial court . . . ."). The "court's exercise of discretion in dealing with requests for specific inquiries of prospective jurors in the voir dire examination is subject to reversal only on a showing of prejudice in that the voir dire examination failed to afford the parties an opportunity to select an impartial and unbiased jury." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.2 on R. 1:8-3 (2021).

B.

1.

"[T]he defendant in a criminal trial has a constitutional right to be fairly tried by an impartial jury." State v. Williams, 93 N.J. 39, 61 (1983). That right is "rooted in both the Sixth Amendment of the [F]ederal [C]onstitution and Art. I, par. 10 of the State Constitution." Ibid. As this Court has recognized, the independent obligation of the court "to take all appropriate

12

measures to ensure the fair and proper administration of a criminal trial" begins with voir dire. <u>Fortin</u>, 178 N.J. at 575 (quoting <u>Williams</u>, 93 N.J. at 62). "A 'vital aspect' of that responsibility is to ensure the impaneling of only impartial jurors by ferreting out potential and latent juror biases." <u>Ibid.</u> (quoting <u>Williams</u>, 93 N.J. at 62-63, 68).

To that end, this Court has sought to distinguish between questioning of prospective jurors that is intended to reveal biases and inquiry that may improperly indoctrinate jurors as to the outcome they should reach in a given case.

In <u>Manley</u>, a defendant charged with murder sought to inquire during jury selection whether prospective jurors, if informed that the defendant had been previously convicted of "atrocious assault and battery," would follow the judge's instruction to consider his prior conviction only for a limited purpose. 54 N.J. at 263-64. Noting that the defendant had yet to decide whether to testify and that it was therefore unclear whether the jury would be informed of defendant's prior conviction, the trial court declined the defendant's request. <u>Id.</u> at 264-65. The defendant elected to testify and was asked on direct examination about his prior conviction. <u>Id.</u> at 265. Appealing his conviction, the defendant argued that he was prejudiced by the judge's refusal to allow

him to elicit prospective jurors' views on his prior crime during voir dire. Id. at 265-66.

This Court held that given the uncertainty about the defendant's intent to testify at the time of jury selection, the trial court did not abuse its discretion when it rejected the defendant's proposed voir dire question, id. at 271, but it addressed what it considered to be inappropriate indoctrination of prospective jurors in the voir dire practice prevalent at the time, id. at 280-81. The Court acknowledged other jurisdictions' adoption of methods "designed to restore the fundamental basis for preliminary questioning, i.e., an expedient selection of a fair and impartial jury, one that will decide the case fairly under the evidence presented and the instructions of the court." Id. at 280. It observed,

> Obviously a most important method is to limit more stringently the conduct and scope of the voir dire. Essentially this means eliminating the efforts to indoctrinate, to persuade, to instruct by favorable explanation of legal principles that may or may not be involved, to lecture on the law and the facts and the relation of one to the other, the lecture ending in a question for form's sake. It means also a prohibition of the hypothetical question intended and so framed as to commit or to pledge jurors to a point of view or a result before they have heard any evidence, argument of counsel or instructions of the court.
>
> [Id. at 280-81.]

"In order to remedy the situation," the Court adopted Rule 1:8-3(a), which "require[s] trial judges to exercise greater control over the voir dire

14

questioning than has been exercised in our State in modern times." Id. at 281-82.  Amended in 2018 to remove a reference to death penalty cases, the rule currently provides that, "[f]or the purpose of determining whether a challenge should be interposed, the court shall interrogate the prospective jurors in the box after the required number are drawn without placing them under oath.  The parties or their attorneys may supplement the court's interrogation in its discretion."  R. 1:8-3(a); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 1:8-3(a) (2021) ("[T]he general, although not uniform, practice since adoption of the rule is interrogation by the court alone after its consideration of counsel's request that specified questions be posed or that particular attitudes, opinions, or potential biases be elicited.").

Following Manley, and in light of Rule 1:8-3(a)'s clarification that the trial court bears the primary responsibility to conduct voir dire, this Court further addressed the trial court's role in questioning prospective jurors.

Recognizing that "voir dire acts as a discovery tool," the Court in State v. Moore, a capital case, characterized the inquiry as "a conversation in which the parties are trying to reveal the source of any [juror] attitudes without manipulation or delay of the trial."  122 N.J. 420, 446 (1991).  The Court clarified that its purpose in Manley was "not to eliminate judicial inquiry into juror biases in the context of the case but rather 'to limit more stringently the

15

conduct and scope of the voir dire.'" Id. at 447 (quoting Manley, 54 N.J. at 280). The Moore Court observed that "[t]he mere fact some inquiry on voir dire may touch on instructions later to be given does not per se render such questions beyond the scope of voir dire." Id. at 456 (quoting Brazel v. State, 759 S.W.2d 28, 30 (Ark. 1988)).

In Fortin, another capital case, the Court noted that Manley addressed the "endemic abuses in the manner in which lawyers conducted voir dire at that time," a practice that featured "counsels' efforts at partisan persuasion and indoctrination of prospective jurors," as well as hypothetical questions designed to commit jurors to a specific point of view. 178 N.J. at 577. The Court clarified that Manley had been misconstrued to "limit voir dire to the bare minimum necessary to qualify a juror" in a death penalty trial. Ibid. (quoting State v. Biegenwald, 126 N.J. 1, 33 (1991)). It confirmed that Manley did not bar a lawyer's "thorough voir dire to evaluate and assess jurors' attitudes in order to effectively participate in jury selection" in a capital case. Ibid. (quoting Williams, 113 N.J. at 409).

The Court thus underscored the propriety of inquiring about a juror's ability to follow the trial judge's instructions or to deliberate with an open mind, so long as the questions do not indoctrinate prospective jurors about the issues that the jury will decide. Fortin, 178 N.J. at 577; see also Moore, 122

16

N.J. at 456. Our case law consistently endorses voir dire questions that "probe the minds of the prospective jurors to ascertain whether they hold biases that would interfere with their ability to decide the case fairly and impartially." State v. Erazo, 126 N.J. 112, 129 (1991); accord Winder, 200 N.J. at 251-52. The trial court is charged to scrutinize the language of a question proposed by counsel and to reject or reformulate that question if it crosses the line from inquiry to advocacy. See, e.g., State v. Biegenwald, 106 N.J. 13, 28-30 (1987); Manley, 54 N.J. at 282-83.

2.

This Court has not previously considered the propriety of voir dire questions addressing the State's inability to produce a particular category of evidence at trial. The general principles stated in Manley, Moore, Erazo, and Fortin, however, provide important guidance relevant to that issue.

In appropriate cases, the State's inability to present a particular category of evidence can be a legitimate subject for the trial judge to address in voir dire.[1] If a juror is unwilling to consider the State's proofs absent a specific

---

[1] Appellate courts in several of our sister jurisdictions have upheld inquiry into prospective jurors' views on the prosecution's inability to present specific categories of evidence. See, e.g., Morris v. State, 42 A.3d 83, 85 (Md. Ct. Spec. App. 2012) (approving inquiry as to prospective jurors' ability to be fair and impartial notwithstanding their expectations, based on media depictions of court proceedings, regarding the evidence to be presented); Commonwealth v. Gray, 990 N.E.2d 528, 536-37 (Mass. 2013) (approving a voir dire question

17

type of evidence, that juror may be incapable of following the court's instructions or fairly deciding the case. Questioning designed to reveal a juror's bias in that regard serves the purpose of voir dire: to select a jury that will deliberate fairly and adhere to the court's instructions. Winder, 200 N.J. at 251-53; Fortin, 178 N.J. at 575, 580-81; Manley, 54 N.J. at 281.

In this case, the State charged defendant with second-degree unlawful possession of a weapon contrary to N.J.S.A. 2C:39-5(b)(1). The State had the burden to prove beyond a reasonable doubt that defendant "knowingly [had] in his possession any handgun . . . without first having obtained a permit to carry the same as provided in [N.J.S.A.] 2C:58-4."[2] To meet its burden to prove that

about jurors' attitudes toward the prosecution's failure to present DNA or fingerprint evidence, but cautioning that such inquiry should be used "sparingly"); Goff v. State, 14 So. 3d 625, 652-53 (Miss. 2009) (holding that the trial court properly exercised its discretion when it allowed voir dire about prospective jurors' ability to "listen to the evidence and not speculate" about the absence of DNA or fingerprint evidence); Corner v. State, 744 So. 2d 793, 794-96 (Miss. Ct. App. 1999) (holding that the trial court properly allowed voir dire questioning as to whether prospective jurors "could not even consider finding a defendant guilty in an armed robbery case unless and until the State actually showed [them] the weapon that was used").

[2] The three other offenses charged in this case similarly involved the use of a weapon. With respect to the charge of second-degree possession of a weapon for an unlawful purpose, the State had the burden to prove beyond a reasonable doubt that defendant "ha[d] in his possession" a firearm "with a purpose to use it unlawfully against the person or property of another." N.J.S.A. 2C:39-4(a)(1). With respect to the charge of fourth-degree aggravated assault, the State had the burden to prove beyond a reasonable doubt that defendant "[k]nowingly under circumstances manifesting extreme indifference to the

18

defendant unlawfully possessed a handgun, the State was not required to offer into evidence the weapon that it alleged was possessed by defendant. See N.J.S.A. 2C:39-5(b)(1); Model Jury Charges (Criminal), "Unlawful Possession of a Handgun (Second Degree)" (N.J.S.A. 2C:39-5(b)) (rev. June 11, 2018) (presenting alternative language for the court to include in a jury charge if the weapon at issue is not admitted into evidence). To the contrary, the State was entitled to rely on the testimony of eyewitnesses who stated that they saw defendant in possession of a handgun during their encounter with him.

Accordingly, a prospective juror unwilling to consider finding a defendant guilty if the State failed to produce the weapon -- no matter what other evidence the State presented that the defendant possessed that weapon -- may be a biased juror. The trial court correctly recognized that the absence of the weapon allegedly possessed by defendant was a legitimate area of inquiry in voir dire.

A jury, however, would be permitted to consider the State's inability to produce the handgun at issue as a factor when it decided whether the State had

---

value of human life point[ed] a firearm . . . at or in the direction of another, whether or not [he] believe[d] it to be loaded." N.J.S.A. 2C:12-1(b)(4). With respect to the charge of second-degree certain persons not to have weapons, the State had the burden to prove beyond a reasonable doubt that defendant was convicted of a predicate crime enumerated in that statute and that he "purchase[d], own[ed], possesse[d] or control[led] a firearm." N.J.S.A. 2C:39-7(b).

met its burden to prove beyond a reasonable doubt the elements of each offense. That aspect of the governing law was not explained in either version of the question asked to prospective jurors in this case. Neither question posed by the trial court presented the issue to the jurors in a balanced manner.

As the record makes clear, the trial court and the State acted in good faith in this case. The trial court solicited and considered both parties' positions when it formulated its questions. There was nothing inappropriate about the prosecutor's exercise of peremptory challenges in the wake of the prospective jurors' responses. The questions posed to prospective jurors about the weapon, however, improperly suggested that jurors should not consider the absence of a handgun as a factor when they evaluated the State's proofs. Although the revised question was more informative than the original, both versions minimized the State's burden of proof with respect to the handgun. Moreover, some of the prospective jurors' responses demonstrated that the court's inquiry confused them.

We concur with the Appellate Division that by virtue of the voir dire questions, the jury selected in this case may have been biased in favor of the State. We also agree that the voir dire jeopardized the fairness of defendant's trial. We share the Appellate Division's conclusion that defendant is entitled to a new trial.

20

3.

If a trial court inquires during voir dire about the absence of evidence, it should pose a balanced question. In a case such as this, in which the issue is the absence of a weapon, the court may pose a question in the following form:

> The State is not legally required to produce a gun if a defendant is charged with weapons offenses, but you as a juror may choose to consider the absence of any evidence in deciding whether the State has met its burden of proving defendant guilty beyond a reasonable doubt. If the State did not recover and does not produce the gun allegedly used in this case, but presents evidence in the form of testimony, will you be able to be a fair and impartial juror and decide whether the State has proven that defendant is guilty beyond a reasonable doubt of the offenses charged?

We view this question to present the issue to prospective jurors in a neutral, non-partisan manner. The trial court on remand may use this question.

IV.

The judgment of the Appellate Division is affirmed as modified, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.

21